CASE 17—INDICTMENT FOR MURDER—JUNE 19.

# William Kriel vs. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. When the State makes out an unlawful homicide with a deadly weapon, and identifies the accused as the perpetrator, it has shown all that is essential to conviction.

2. Necessary self-defense, or misadventure, or insanity, moral or mental, as an excuse, comes as a defense.

3. Sanity is always presumed by law. This universal presumption can only be rebutted by satisfactory evidence; that is, the jury must be satisfied from the evidence, whether produced by the one side or the other, that the perpetrator of a homicide, not in necessary self-defense, nor by mere unintentional accident, was irresponsibly insane when the deed was perpetrated; for evidence, merely raising a doubt as to mental soundness, would not be sufficient to repel the legal presumption of soundness.

4. It is the legal duty of all juries to convict the perpetrator of an unjustifiable and, *prima facie*, inexcusable homicide, unless the evidence rationally convinces them that, at the time of the killing, the perpetrator was laboring under such a state of mental aberration and disease as to deprive him of a knowledge of right and wrong; or if he knew this, still to take from him the moral power to resist his morbid inclination to its perpetration.

5. A mere doubt of sanity, however rational, is wholly insufficient to rebut this legal presumption, and can never be a justification to a jury to acquit; whilst, on the other hand—

William Kriel vs. Commonwealth.

6.  If the preponderating evidence convinces the jury that the perpetrator was in such a mentally diseased condition as to destroy his free agency, they should not convict merely because they might entertain a rational doubt as to this. The presumption of sanity must be overcome by a preponderance in the prisoner's behalf.

7.  A rational doubt as to whether a homicide had been committed, or as to the perpetrator, should very rationally lead to an acquittal; but if acquittal should result from a mere doubt of sanity, then the legal presumption of soundness would amount to but little, if anything.

8.  A mere doubt of sanity has never entered as an element into that rational doubt which should produce acquittal.

9.  Mental or moral insanity, however recent, to such an extent as to destroy free agency and moral responsibility, on being established by satisfactory evidence, will excuse the prisoner.

10.  Malice is an essential ingredient in murder; but this, too, is to be presumed from the violence and wantonness of the assault, and character of the weapon used.

11.  When sudden passion has been produced from reasonable cause, this will repel the presumption of malice, and palliate the offense to manslaughter; and—

12.  Our Criminal Code gives the prisoner the benefit of a rational doubt as to which grade of offense has been committed.

13.  Drunkenness from mere social hilarity, though wrong in the perpetration, may be of such a character, and to such a degree, as to show that the mind was incapable of preconceived malice or intentional homicide, and reduce the homicide to manslaughter; but as this state of mind is superinduced by the wrongful act of the perpetrator, a due regard for the interest of society, and the personal security of every one, precludes it from being a satisfactory excuse, and an entire exemption from punishment.

14.  Excuse, because of drunkenness, is at all times to be received with great caution, and, because it is so easily perverted, and the danger so great of revenge, for real or imaginary cause of pre-existing offense or malice, under such cover.

15.  "If the jury have a reasonable doubt as to the sanity of the accused, at the time of the alleged killing, they must acquit him, and it is immaterial how that insanity was superinduced." *This instruction is erroneous.* It required of the jury, before they could convict, that they should believe the prisoner was sane beyond a rational doubt at the time of the killing.

William Kriel vs. Commonwealth.

16. *Misnomer in the indictment.* Accused was indicted for killing "Barbara Kriel, the wife of the defendant." The evidence showed that her name was Margaret Kriel. In the court below no objection to the evidence was made on that account, and no motion made to withdraw it from the jury. After conviction this court cannot suppose the misdescription of the given name, when placed in juxtaposition with the further description that she was *his wife*, could have misled him, or in any manner prevented him from a fair trial. (*See sec.* 127, *Criminal Code.*)

Wm. L. Jackson and
Selby Harney,                      For Appellant,

CITED—

*Criminal Code, secs.* 327, 328, 334, 335, 242, 344, 124, 264, 629, 226.

*Civil Code, secs.* 661, 633.

4 *State Trials,* 748; 6 *Ib.,* 259.

2 *Russell on Crimes, pp.* 926–7, 732–3, 828, 725.

1 *Ib.,* 481, 832; 2 *Greenleaf on Ev., p.* 673.

2 *Phillips on Ev.,* 423, 759, 725.

3 *Starkie on Ev., p.* 1736.

18 *B. Mon.,* 792; *Thurman vs. Virgin and wife.*

4 *Bibb,* 349; *Haly vs. McCay.*

1 *J. J. M.,* 422; *Royal vs. Bryan.*

4 *B. Mon.,* 476; *Chrisman vs. Gregory's heirs.*

4 *B. Mon.,* 522.

6 *J. J. Mar.,* 606; *Fowler vs. Woodyard.*

2 *Bush,* 82; *Commonwealth vs. Shields.*

3 *Bibb,* 486; *Commonwealth vs. Keen.*

1 *Met.,* 376; *Payne vs. Commonwealth.*

16 *B. Mon.,* 596; *Graham vs. Commonwealth.*

1 *Duvall,* 232; *Commonwealth vs. Smith.*

3 *Dana,* 31; *Honore vs. Maney.*

2 *Bibb,* 33; *Mahan vs. Jane.*

1 *J. J. M.,* 320; *McKinney vs. Commonwealth.*

1 *Mar.,* 579; *Haggin vs. Christian.*

William Kriel vs. Commonwealth.

1 *Bibb*, 82; 6 *Dana*, 317, 320.

1 *J. J. M.*, 52, 432; 1 *B. Mon.*, 82.

4 *B. Mon.*, 476, 522; 7 *B. Mon.*, 196.

14 *B. Mon.*, 484; 16 *Pick.*, 120; 4 *Blackstone*, 196.

3 *Met.*, 6; *Commonwealth vs. Perigo.*

1 *Wharton*, sec. 944,

31 *Miss.* (2 *George*), 504; *Cotton vs. State.*

4 *Mass.*, 391; *Commonwealth vs. Drew, &c.*

1 *Bush*, 11; *Hensley vs. Commonwealth.*

3 *Bush*, 112; *Sparks vs. Commonwealth.*

JOHN RODMAN, Attorney General,          For Appellee,
                    CITED—

*Wharton's Amr. Crim. Law, sec.* 950.

*Revised Statutes*, 2 *Stanton*, 414.

*Criminal Code*, secs. 247, 127.

1 *Met.*, 6; *Tipper vs. Commonwealth.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Wm. Kriel having been indicted, tried, and found guilty of the murder of his wife, has appealed to this court for a reversal of the judgment and sentence of death. His only defense was that of insanity, produced from habits of dissipation and excessive drinking of ardent spirits.

The following instructions were given to the jury at the instance of the plaintiff and defendant, and by the court of its own accord.

*For the Commonwealth:*

1. "Felonious homicide may be either murder or manslaughter.

2. "Murder is the killing of a human being by another with malice aforethought.

3. "Malice, *in its legal sense*, denotes a wrongful act done intentionally without just cause.

4. "Malice is *implied by the law* from any deliberate cruel act committed by one person against another, however suddenly done.

5. "If homicide be committed by the use of a deadly weapon in the previous possession of the person slaying, *the law implies* that the act was done with malice.

6. "By the term aforethought is meant a pre-determination to kill, however sudden or recently formed in the mind before killing.

7. "Before the jury can acquit Kriel on the grounds of insanity from delirium tremens (if they believe all the evidence, beyond a reasonable doubt, that he did the killing with a deadly weapon and without any provocation), they should be satisfied, from the whole of the testimony taken together, that he was laboring under a fit of delirium tremens at the time he shot; and the jury cannot presume its existence, at the time of the killing, from proof of antecedent fits, from which he recovered.

8. "In order to acquit the prisoner, Wm. Kriel, on the ground of insanity (if the jury are satisfied, to the exclusion of a reasonable doubt, that he killed Margaret Kriel, his wife, with a deadly weapon, and without any provocation), they should be satisfied that the evidence, all considered together, preponderates towards establishing the fact that he was, at the time he killed Margaret Kriel, his wife, deprived of the force and natural agency of his mind, and that his moral and intellectual faculties were so disordered, by long-continued indulgence in intoxicating liquors, as to induce mental disease, and to deprive his mind of its controlling and directing power, and that he did not have, at the time, sufficient power of self-control to govern his actions.

9. "If the jury believe, beyond a reasonable doubt, from all the evidence in this case, that the accused is

guilty of the crime charged in the indictment, they should find him guilty."

*For the Defendant:*

1. " The crime of murder is the killing of a human being within the peace of the Commonwealth of Kentucky, by a person of sound mind and discretion, with malice aforethought.

2. " If the jury have a reasonable doubt as to any material fact, they must acquit.

3. " If the jury believe that, at the time of the alleged killing, the accused was a person of unsound mind, they must acquit.

4. " If the jury have a reasonable doubt as to the sanity of the accused at the time of the alleged killing, they must acquit him; and it is immaterial how that insanity was superinduced.

5. " That, to convict the accused, the jury must be satisfied, from all the evidence, beyond a reasonable doubt, that he shot his wife deliberately and maliciously, with intent to kill her, and that, at that time, he was a man of sound memory and discretion."

*By the Court:*

" If the jury should find the defendant not guilty, and they acquit him on the ground of insanity, they must state that fact in the verdict."

On application of the jury, after they had retired, and being brought into court in the presence of both parties : " The jury being brought into court for an explanation as to what seems to them to be a conflict between fourth instruction given for defendant and the seventh instruction given for the Commonwealth, the court instructs them thereon, as follows : ' The two instructions taken and considered together, mean, that if the jury have a

reasonable doubt as to whether the accused was of sound mind when he did the killing, they must acquit him, and it is immaterial from what cause his unsoundness of mind may have arisen; but they cannot acquit him on the ground of unsoundness of mind arising from *delirium tremens*, unless they believe, from all the evidence, he labored under unsoundness of mind at the time of the killing; and they cannot presume such unsoundness of mind from the mere fact that he had previously had an attack of delirium tremens, from which he had recovered. If they have a reasonable doubt of his soundness of mind at the time of the killing—it matters not by what cause the unsoundness of mind may have been produced; but the fact of his previously having had an attack of *delirium tremens*, from which he had recovered, is not, of itself, sufficient evidence of unsoundness of mind at the time of the killing; it is a fact, however, to be considered by them in weighing the other testimony bearing on the condition of his mind at the time of the killing.

"'The jury also inquired whether, in making their verdict, they should confine themselves strictly to the evidence and instructions of the court. They are instructed that they are to consider nothing as evidence except what was proved before them in court; and the instructions given by the court are the law of this case; they are, however, to give due consideration to the arguments of counsel, so far as the arguments seem sound and assisting to them in arriving at correct conclusions from the law and evidence. If, however, the jury believe, from the evidence, to the exclusion of a rational doubt, that the accused was of sound mind, and killed the deceased, but did so without malice aforethought, they should find him guilty of manslaughter,

and fix in their verdict the period of his confinement in the penitentiary at not less than two nor more than ten years.'"

Under the provisions of our Criminal Code, we have no jurisdiction to reverse on the evidence, for, as to this, the verdict of the jury and judgment of the court are conclusive; but our jurisdiction is confined to the corrections of errors of law, and, therefore, we can only look into the facts to determine as to the proper application, of the legal rules, thereto.

Without a rehearsal of the various facts developed in this case, to some extent conflicting in their nature, it is sufficient to say that the evidence would have justified the jury in finding, either that the defendant was sober and of sound mind at the time of the homicide, or that he was intoxicated, and, to some extent at least, irrational, as they might most credit the statements of the witnesses of the respective parties, or give more importance to the facts detailed by them.

It appears that Mrs. Kriel was a woman of feeble health; delicate and fragile; that she had taken her clothes to the house of her sister, residing in the same city (Louisville) with her, intending to go to the country, and that her mother, sister, and herself, were still at the dinner-table when the accused came in and asked her relative to her taking her clothes away; when she substantially replied she was going to the country, as the doctor had advised her she must do, for her health. The defendant immediately addressed her sister, and asked what she meant by saying, "If he had been my husband, I would have killed him long ago." It further appears, from this sister's evidence, that Kriel and wife had before divided their property, by the advice of their counsel. Immediately after this

address by Kriel to his wife's sister she went up stairs, and Kriel, with violence, choked his wife until she fell prostrate and apparently dead, when her mother gathered her up into her lap; then stooping over her, he pulled from his pocket a pistol and shot her through the head. She never spoke, but expired immediately.

The sister, hearing the confusion below, and supposing Mrs. Kriel had fainted, with a pan of water was returning to the lower room, when Kriel, immediately upon her appearance in sight, shot at, but missed her. He then put his pistol to his own head, and shot once or twice, the balls, however, lodging in the scalp, without fracturing the skull, and then immediately ran, when the crowd, attracted by the alarm, and some policemen, chased him some half mile. When they came up with him he was on his knees and hands under the bank of a small branch, as though he had fallen from exhaustion, or was attempting concealment. He said but little on his way to the jail, and seemed stupid and insensible for some two or more days, eating but little.

Several apparently credible witnesses attest his sober appearance the day before, and down to nightfall, and then the next day down to within a few minutes of the homicide, which occurred between 12 o'clock, M., and 1 o'clock, P. M.

The physicians testified that the subsequent stupor may have been the effect of excessive drinking, or of the concussion of brain from the shots in his scalp, or from the exhaustion resulting from his long chase.

The circumstances sufficiently attest that Kriel and wife had recently had disturbances; had divided their property, and that she had taken her clothes to the house of her sister, to which place he had followed

William Kriel vs. Commonwealth.

her, armed with a deadly weapon, and that, without any sudden provocation, or even irritating language, on her part, he assaulted, shot, and killed her.

The rules of criminal law, especially as applicable to these facts, are few and simple, being founded in wisdom and experience, with a due regard to the protection of life and the preservation of society, yet humane and indulgent to the passions and frailties of human nature and the infirmities of the mind, when diseased and irrational from mental or moral insanity. It is universally written, by all authors on criminal law, *that sanity is to be presumed;* and this doctrine has always been upheld by this court, especially in the two leading cases of *Graham vs. Commonwealth,* 16 *B. Mon.,* 587, and *Smith vs. Commonwealth,* 1 *Duvall,* 224. Therefore, when the State makes out an unlawful homicide with a deadly weapon, and identifies the accused as the perpetrator, it has shown all that is essential to conviction.

Necessary self-defense, or misadventure, or insanity, moral or mental, as an excuse, comes as a defense; and whilst irresponsibility because of insanity need not be shown beyond a rational doubt, yet as sanity is always presumed by law, this universal legal presumption must be rebutted by satisfactory evidence; that is, the jury must be satisfied, from the evidence, whether produced by the one side or the other, that the perpetrator of a homicide not in necessary self-defense, nor by mere unintentional accident, was irresponsibly insane when the deed was perpetrated; for evidence, merely raising a doubt as to mental soundness, would not be sufficient to repel the legal presumption of saneness; as this would be repelling a legal presumption by evidence raising a mere doubt or suspicion as to the mental condition.

It is the legal duty, therefore, of all juries, to convict the perpetrator of an unjustifiable and *prima facie*, inexcusable homicide, unless the evidence rationally convinces them that, at the time of the killing, the perpetrator was laboring under such a state of mental aberration and disease as to deprive him of a knowledge of right and wrong; or if he knew this, still to take from him the moral power to resist his morbid inclination to its perpetration.

A mere doubt of sanity, however rational, is wholly insufficient to rebut this legal presumption, and can never be a justification to a jury to acquit; whilst, on the other hand, if the preponderating evidence convinces them that the perpetrator was in such a mentally diseased condition as to destroy his free agency, they should not convict merely because they might entertain a rational doubt as to this.

The rational doubt of guilt, so humanely entertained by the criminal law as a cause of acquittal, has never been extended to defenses of excuse because of mental or moral insanity; but after the State has made out her case, with the legal presumption of sanity in her behalf, this must be overcome by a preponderance in the prisoner's behalf.

A rational doubt as to whether a homicide had been committed, or as to the perpetrator, should very rationally lead to acquittal; because the law, in its humanity, should never permit a human being's life to be taken without the clearest evidence that a homicide had been committed, and that the accused was the guilty agent. But if acquittal should result from a mere doubt of sanity, then the legal presumption of mental soundness would amount to but little, if anything. A mere doubt of sanity, therefore, has never entered as an element into that rational doubt which should produce acquittal.

If, however, there be mental or moral insanity, however recent, to such an extent as to destroy free agency and moral responsibility, on being established by satisfactory evidence, this will excuse; because the law, in its enlightened benignity, will not punish an irrational and irresponsible being. *Malice* is an essential ingredient in murder; but this, too, is to be presumed from the violence and wantonness of the assault and character of the weapon used; hence, when sudden passion has been produced from reasonable cause, such as jostling, personal violence, and other things, this has been deemed by the law, in its humanity, sufficient to repel the presumption of malice, and to palliate the offense to manslaughter; and our Criminal Code gives the prisoner the benefit of a rational doubt as to which grade of offense has been committed.

So drunkenness, from mere social hilarity, though wrong in the perpetrator, may be of such a character, and to such a degree, as to show that the mind was incapable of preconceived malice or intentional homicide, and reduce the homicide to manslaughter; but as this state of mind is superinduced by the wrongful act of the perpetrator, a due regard for the interest of society and the personal security of every one, precludes it from being a satisfactory excuse, and an entire exemption from punishment. Indeed, if it appeared that intoxication excited the animal passions and aroused a destructive propensity in the accused, why should even drunkenness, in such a case, be considered even a mitigating cause any more than the unchaining a mad dog in the streets of a town, or the riding a vicious animal into a crowd, merely because the perpetrator had no particular malice at any one, or indeed expected death at all to ensue; yet if, by reason thereof, any one should

lose his life, this recklessness is set down as malice toward mankind in general, and the perpetrator criminally responsible in the highest degree? But it is not essential that this should now be decided. Excuse, because of drunkenness, is at all times to be received with great caution, and because so easily perverted, and the danger so great of a revenge, for real or imaginary cause of preexisting offense or malice, under such cover.

And these are the true and essential doctrines, as expounded in the two recited cases of *Graham vs. Commonwealth* and *Smith vs. Commonwealth*, when properly understood and construed; for they are consonant with each other in premises and principle, but somewhat diverse in argument; yet the rules of law, as announced by this court, are identical. None of these wise and humane rules were violated in the instructions given in behalf of the State, but were essentially contravened in those given in defendant's behalf, and at the court's own instance, all of which, however, were greatly calculated to benefit him, whilst no possible injury could result to him; for under these instructions the jury could not *convict him at all if they entertained a rational doubt as to his sanity;* therefore the finding is equivalent to saying *he was sane beyond a rational doubt* when the offense was committed. The case of Smith, recited, was upon a sudden and unexpected broil; therefore, the court said the instruction as to the presumption of malice from the possession and use of the deadly weapon, without reference to the other circumstances, or explanation of its possession, was misleading in his case. But here the husband followed the wife to her sister's house, armed with a deadly weapon, which he used without any immediate exciting circumstance; and he does not attempt

William Kriel vs. Commonwealth.

to account for its possession by showing any necessity for self-defense or other reason. The instructions Nos. 4 and 5, given in this case in behalf of the Commonwealth, were not, therefore, misleading, but a true exposition of the legal presumptions from the facts.

There are other alleged errors; but on close scrutiny we have failed to discover any such to defendant's prejudice ; and as the circuit judge, in his written opinion overruling the motion for a new trial, sufficiently responded to them, we shall not notice them in detail.

The name of the deceased was alleged to be Barbara Kriel, *the wife of the defendant*. The evidence is that her name was Margaret. The name, however, is but descriptive, and when the person killed is also properly described as the prisoner's *wife*, and no objection to the evidence was made on that account, and no motion made to withdraw it from the jury, and after conviction and judgment, we cannot suppose the misdescription of the given name, when placed in. *juxtaposition* with the further description that she was *his wife*, could have misled him, or in any manner prevented him from a fair trial, and, therefore, furnish no reversable grounds.

Wherefore, being satisfied that the essential errors committed in this case were calculated to facilitate the finding of the prisoner either not guilty at all, or for manslaughter only, and all for his benefit, and when the law was more favorably expounded in his behalf than any elementary writer or decision of this court authorized, and, notwithstanding which, he has been found guility of murder in the first degree, we cannot, in the legal discharge of our duty, with a due regard to the security of society and the prevention of crime, disturb the judgment. Therefore, it is affirmed.