## Jennings v. Commonwealth.

(Decided October 3, 1930.)

E. BERTRAM for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

J. B. Jennings was indicted in the circuit court for the murder of Dan Watkins. On the trial of the case he was found guilty and his punishment was fixed at life imprisonment. He appeals.

A reversal is asked mainly on the ground that under the evidence the court should not have instructed the jury as to murder, and that the verdict is palpably against the evidence. The facts are these: Jennings lived at Lily Dale, Tenn., not far from the Kentucky line. Dan Watkins lived in Cumberland county near the Clinton line and not very far from Lily Dale. The parties had known each other for a long time, and had no trouble so far as appears. The shooting occurred on Sunday, December 8, 1929. That morning Jennings and his brother-in-law, John Foster, each riding a mule, were in Kentucky. About noon they stopped at Chestnut Grove Ridge where Jennings bought some chestnuts. That afternoon they went to the home of John Vaughn in Clinton county and there they met Dan Watkins and several others. Watkins had a small amount of liquor with him. After this was consumed Watkins sent two other persons there to his home four miles away to get some liquor. They brought back a quart jar and a pint bottle of whisky. The party remained there for some time. Part of the whisky was consumed, and toward night Watkins, Jennings, and Foster left together, traveling the county road in the direction of Lily Dale. When they reached the farm of Ed Upchurch they left the road and followed a walkway across Upchurch's farm. When they had passed Upchurch's house, about 250 or 300 yards and had nearly reached the wire fence inclosing the farm, six pistol shots were fired. Upchurch and his wife and some other neighbors hearing the shots went to the place. When Upchurch got there he found Foster lying in the road, his face covered with blood. Watkins was lying in the road dead; one pistol shot had entered below the right ear and come out just below the left ear, the point of entrance being a little lower than the point of exit. Another pistol shot had entered a little to the left of the spine and between it and the shoulder blade and did not come out. Watkins' pistol was lying on the ground about seven feet from him, and between the pis-

tol and the body was a pint bottle of whisky. The shooting occurred between sundown and dark. Jennings said to Upchurch when he came, "Ed I have had to do something I didn't want to do, I have shot a fellow." He then went and picked up Watkins' pistol; took the shells out of it and threw the pistol down, the pistol barrel sticking in the mud. Upchurch said that when Jennings took the loads out of the pistol they rattled like some of them were empty, but he did not look at the shells. But the commonwealth proved by two witnesses, who examined the pistol after Jennings threw it down, that there was a little mud in the end of the pistol and that when they took this out they found lint in the barrel and no powder burn in the barrel or in the chamber. They testified from their examination that the pistol had not been fired at all. A number of witnesses for the commonwealth, who heard the shots, testified that they were fired rapidly without any break and all had about the same sound.

On the other hand, the defendant testified that Watkins and Foster were ahead of him and he heard Foster say to Watkins, "You shot two of my cousins." Watkins answered, with an oath, "I will do you the same way," and reached for his pistol and punched Foster in the side with it, then hit him over the side of the head. His horse jumped and he rode back and did the same thing again. Jennings then rode up and tried to catch up with them; when he got next to them Watkins shot two shots at Foster. He said, "Don't do that Danny." Watkins said, "I will do you that way too," and he shot one shot at Jennings. Then Jennings shot three shots at him just as fast as he could shoot. Foster, in substance, made the same statement. He testified that Jennings was riding behind him and Watkins; that Watkins fired on him twice, and after these two shots were fired struck him over the head with a pistol and he fell off his mule, and saw the shooting of Watkins from the ground. He also said that Watkins turned in the saddle and shot at Jennings as he came up. Jennings and Foster account for the shooting of Watkins in the back by the fact that Watkins' horse jumped during the fray.

It is earnestly insisted for the appellant that no instructions should have been given on murder on the ground that the killing occurred in an affray, as shown by the evidence. But, if the evidence for the commonwealth was true, there was no affray. That evidence

showed that Watkins' pistol was not discharged. It also showed that the shots were fired in rapid succession; so fast that one could not count them and without any break. It also showed that Watkins was shot in the back. If this evidence was true, the jury had a right to conclude that the testimony of Jennings and Foster was not true, and to reject their testimony entirely. In Kriel v. Com., 5 Bush, 371, this court, after holding that sanity is presumed, thus stated the rule: "Therefore, when the state makes out an unlawful homicide with a deadly weapon, and identifies the accused as the perpetrator, it has shown all that is essential to conviction."

In Donellan v. Commonwealth, 7 Bush, 679, after holding that an instruction that the use of a deadly weapon, not in necessary self-defense, whereby death ensues, will constitute murder was erroneous, the court added: "Such use of a deadly weapon is evidence of malice." Certainly this should be true in the case of a man shot in the back, nothing else appearing. See Turner v. Commonwealth, 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329. The jury evidently concluded that all the truth had not been told, and that there were facts in the case which had been concealed by the defendant and Foster. It is hard to understand why Jennings took the cartridges out of Watkins pistol and took them away with him without showing them to anybody, unless he did this to conceal the fact that Watkins' pistol had not been discharged. The court therefore properly submitted the case to the jury on all the facts. The jury saw and heard the witnesses, and their verdict will not be disturbed here unless it is so flagrantly against the evidence as to shock the conscience of the court and lead unerringly to the belief that it was the result of passion and prejudice. Picklesimer v. Com., 224 Ky. 381, 6. S. W. (2d) 457; Thacker v. Com., 228 Ky. 819, 16 S. W. (2d) 448.

Appellant complains of the self-defense instruction because it uses the words: "He had reasonable grounds to believe and in good faith did believe" that he or his brother-in-law John Foster was then and there in danger of death or great bodily harm at the hands of Watkins. He insists that the words "in good faith" should not have been used. The instruction is copied verbatim from section 758 of Hobson, Blain and Caldwell on instructions, and is sustained by the authorities

therein cited. In addition to this, the same instruction, verbatim, was approved in Duke v. Com., 191 Ky. 147, 229 S. W. 122, and Sain v. Com., 193 Ky. 221, 235 S. W. 368. The instruction in these words has been often approved by the court in other cases and not mentioned in the opinions. The other instructions are not complained of, and the court on the whole case finds no error in the record prejudicial to the substantial rights of the accused. In cases like this, where the real facts as to the homicide are not told, it is the peculiar province of the jury of the vicinage to determine the merits of the case.

Judgment affirmed.