## Hunt v. Commonwealth.

(Decided September 29, 1931.)

O. M. GOFF and ROSCOE VANOVER, Jr., for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Perry Hunt, Charlie Hunt, and three others were jointly indicted in the Pike circuit court for the murder of Pem Dameron. On a separate trial Perry Hunt was found guilty, his punishment fixed at life imprisonment, and he has appealed.

Only two questions, both relating to the evidence, are raised and argued by appellant's counsel as ground for reversal. It is urged that the verdict of the jury is not sustained by the evidence, and that the court erred in admitting incompetent evidence on behalf of the commonwealth.

Raymond Bevins, a district game warden, accompanied by Pem Dameron, a constable of Pike county, and John D. Steele, who is referred to in the evidence as a voluntary game warden, made a trip to Levisa fork of the Big Sandy river June 21, 1930, for the purpose of investigating rumors as to violation of the fish and game law. On reaching a point near the home of Charlie Hunt they discovered a seine stretched across the river and saw some parties running away and seeking hiding in timber and undergrowth. The evidence shows that John Blair, Clell Hunt, Charlie Hunt, Phil Hunt, and Ivel Whitt were the parties engaged in seining, and that they had placed a boy as a lookout to warn them of the approach of others. When the presence of these officers was discovered, Charlie Hunt went out of the river and started up the mountain on the opposite side. He was followed by Mr. Steele, who repeatedly commanded him to halt. Hunt paid no attention to these commands. After following Charlie Hunt for some distance up the mountain, Steele fired his pistol.

He testified that it appeared to him that he would be unable to overtake Hunt, and that he fired the pistol for the purpose of frightening him and causing him to stop. He stated that he did not fire directly at Hunt, but 10 or more feet away from him. He was positive in his statement that he did not shoot Hunt. Hunt testified that the bullet struck him in the lower part of the heel and came out the bottom of his foot. The conflicting evidence of these and other witnesses leaves a doubt as to whether Hunt was actually shot. Be that as it may, immediately after the shot was fired Hunt made a considerable outcry, stating that he had been shot and ask-

ing his pursuer not to shoot again. After considerable controversy, Hunt submitted himself to the custody of Steele, and they started back down the mountain, but before reaching the river a shot was fired from a clump of bushes which struck and killed Pem Dameron who was in the road standing near the officer's automobile. Although the person firing was not known to the officer, immediately preceding the shooting, Bevins saw one or more armed persons going into the clump of bushes.

There is no evidence indicating that appellant had any part in the seining. He testified, as did others, that he had been working for one Mr. Griffie and that he returned late in the afternoon; that about the time of his arrival he heard a pistol shot and his father's outcry. Will Hunt, a brother of Charlie Hunt, was going toward the scene of the difficulty with a rifle. Appellant took this gun from him, ran on to the clump of bushes and fired two shots, one killing Pem Dameron and the other wounding Raymond Bevins. Will Hunt testified that he procured the rifle after he heard the shot fired by Steele and after his brother's outcry. The evidence of witnesses for the commonwealth, including that of Herman Blair, whom the evidence discloses was the lookout to warn the seiners, indicates that appellant, armed with the rifle which he had taken from his uncle, was going toward the point from which the fatal shot was fired at the time Steele's pistol was fired. Appellant testified that his father had ceased to holler a minute or two before he fired the two shots and he thought he had been killed. The evidence for the commonwealth tends to show that at the time Dameron was shot he had walked a short distance from the automobile and was leaning on his cane. He was a cripple and walked with considerable difficulty.

There is a conflict in the evidence as to what Dameron was doing at the time he was shot. Witnesses for the commonwealth stated that he had no weapon in his hands, but the evidence of appellant and some of his witnesses was to the effect that he had a pistol in his hand. Appellant testified that he was something like 100 yards from Dameron and Bevins at the time he fired the shots; that he fired because he "allowed" they were the ones who shot his father. He gave as further reason that he was scared and excited. Appellant was pressed with questions as to where his father was at the time he heard the pistol shot and his father's outcry. He was vague

and indefinite in his answers. He stated that he could not tell "pime blank" where he was. His uncle, from whom he procured the rifle, testified to having seen Steele cross the river and stated that he heard the pistol shot and heard his brother holler, back in the mountain.

There is evidence to show that a few weeks before this fatal difficulty the game wardens had found appellant in the act of gigging fish and had attempted to arrest him, but that he resisted the officers and ran away. Dameron was with the officers at that time. There is evidence of statements made by appellant prior to the killing indicating a purpose upon his part to continue taking fish from the stream and not to tolerate any interference by the game wardens or officers of the law.

Under the conflicting evidence in this case, and in view of appellant's statement that he fired the fatal shot after he thought his father had been killed, the jury had the right to conclude that he was not acting in defense of his father. The evidence also warranted the jury in concluding that there was no justification for the killing of Dameron. This court is committed to the doctrine that the verdict of the jury should not be disturbed as against the weight of the evidence unless it is so flagrantly against the evidence as to shock the conscience and clearly indicate that it was the result of passion and prejudice. Jones v. Commonwealth, 230 Ky. 24, 18 S. W. (2d) 287; Adams v. Commonwealth, 227 Ky. 255, 12 S. W. (2d) 275; Jennings v. Commonwealth, 235 Ky. 391, 31 S. W. (2d) 622.

The other ground urged for reversal calls for more serious consideration. Over the objection of appellant, John D. Steele was permitted to testify that, when Dameron was shot and fell, he said to Charlie Hunt, "Look, they have killed a man." The latter replied, "Hell, that aint nothing, we are going to kill all of you. If I don't get you, some of the rest will for we are going to kill all of you before you get out of here. The only thing that will keep me from killing you when we get to the bottom is for you to kill me first."

This evidence was admitted by the trial judge on the theory that it was a part of the res gestae. Although something might be said on both sides of the question, a very grave doubt remains as to the competency of this evidence on the theory suggested, or on other theories that might be urged with equal consistency. Under the

conclusion reached, it is unnecessary to determine whether the admission of this evidence constituted error.

Section 340, Criminal Code of Practice, provides: "A judgment of conviction shall be reversed for any error of law (appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby)." Under this provision, the court is not required to reverse a judgment because of some error that may appear on the record. It is only when it manifestly appears that the substantial rights of the defendant have been prejudiced by some error appearing in the record that a reversal is authorized: and, in determining that matter, the court does not weigh the single incident, but considers it is connection with all other aspects of the case and determines from the entire record whether the defendant has had a substantially fair trial.

That part of the Code provision included in brackets was added by amendment, and the purpose and effect of this amendment is fully and clearly diccussed in the case of Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239, 244 and cases cited therein. In the Hargis case the court quotes with approval from Collett v. Commonwealth (Ky.) 121 S. W. 426, where there had been an error in the admission of evidence and wherein it is said:

> "The jurisdiction of this court in criminal cases is wholly statutory. We have only such jurisdiction as the law confers. One of the limitations upon our jurisdiction is that a judgment of conviction shall not be reversed for an error of law appearing in the record, unless, upon a consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

In the case of Overstreet v. Commonwealth, 147 Ky. 471, 144 S. W. 751, 753, it is said:

> "We may also observe that it would be a rare thing in the trial of an important and hotly contested case if errors of law could not be found in the record, judged by strict legal standards. But every judge and lawyer . . . knows that a great many of these errors do not at all prejudice or affect the substantial rights of the accused. The basic rule of our system of criminal pleadings and practice is that every person accused of crime has the right to

298

demand and have a fair trial, in substance as well as in form; and when he has had such a trial before the tribunal created by law for that purpose, which, under our practice, is a trial judge and a jury, he must abide by the decision, unless it be that his substantial rights have in some manner been prejudiced.''

Upon a careful consideration of the whole case, we are satisfied that appellant had a substantially fair trial, and that his substantial rights were not prejudiced by error in the admission of the evidence in question, if, indeed, it was error.

Judgment affirmed.