### Alex Shields and Harry Shields v. Commonwealth.

(Decided May 9, 1924.)

### Appeal from Anderson Circuit Court.

1. Criminal Law—Rules of Evidence Liberalized in Effort to Corroborate Accomplice.—In effort to corroborate testimony of accomplice, strict rules of evidence must be liberalized, under Criminal Code of Practice, sections 241, 242.

2. Criminal Law—Test in Determining Whether Accomplice Corroborated.—Proper test in determining whether accomplice has sufficient corroboration under Criminal Code of Practice, sections 241, 242, is to first eliminate evidence of accomplice, then, if there is sufficient inculpatory evidence tending to connect defendant with offense, there is corroboration.

3. Constitutional Law—Courts have Nothing to do with Wisdom of Statutes.—Courts have nothing to do with wisdom of statutes; it is their duty only to enforce them, when valid.

4. Criminal Law—Accomplice Held Not Sufficiently Corroborated.—Accomplice in homicide held not sufficiently corroborated to authorize submission of case to jury, under Criminal Code of Practice, sections 241, 242.

HUGGINS & OLDHAM and OSSO W. STANLEY for appellants.

MOORMAN DITTO, Assistant Attorney General, H. B. KINSOLVING, JR., and L. W. McKEE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

The two appellants, together with Mat Leathers, Robert McCrocklin, Damon Shrewsbury, Jasper Muir and Clyde Satterly, were jointly charged by indictment with the murder of Burdette Huffaker. The indictment was in ten counts, one charging them all jointly with the murder, another charging a conspiracy to murder which was executed, another a confederation and banding together and going forth to molest, injure and carry away personal property of another, in the carrying out of which conspiracy the death of Huffaker resulted. The other seven counts charged separately each of the defendants with the murder of Huffaker, and that at the time the other six were present aiding and abetting therein.

The two appellants were jointly tried, although separately from the other defendants, and were each found guilty of voluntary manslaughter and sentenced to five years' imprisonment.

The seven defendants were all residents of Nelson county and lived in and about Bloomfield. The Old Joe distillery is in Anderson county on the far side thereof from Nelson county, and near to the Woodford county line. The distance from Bloomfield to the Old Joe distillery by the usually traveled route is between 45 and 50 miles.

Huffaker was a watchman at the Old Joe distillery, and went on duty the night of the 11th of January, 1923,

at 11 o'clock. Some time between that and the next morning at seven he was shot and killed, and this indictment resulted.

Mat Leathers, one of those charged in the indictment, is the only witness who gives any direct testimony against either of the appellants. Neither of them testified, nor did they offer any witness. Not only was Leathers charged in the indictment jointly with the others, but he is confessedly one of the alleged conspirators, and the attorneys for the Commonwealth agree that he is an accomplice.

The only question, therefore, which we deem it necessary to pass on is whether there is any corroborating evidence tending to connect either of these appellants with the murder of Huffaker, or participation in such alleged conspiracy.

The record discloses that some of the other defendants named in the indictment have had their separate trials, but does not disclose how they may have terminated. Our discussion of the evidence, therefore, in this case will have reference only to whether or not the same sufficiently corroborates the evidence of Leathers to authorize under our Code provisions the submission of this case to the jury, and is not to be interpreted as having any effect whatsoever upon the same question as applied to any other of the defendants.

From the nature of things in an effort to corroborate the testimony of an accomplice the strict rules of evidence must in some measure be liberalized; for, an isolated fact or circumstance which ordinarily within itself would have no probative force on a question of fact, might be very enlightening and carry great force when considered in connection with other facts on a question of corroboration.

Section 241 of our Criminal Code provides:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

Section 242 of the Criminal Code provides:

"In all cases where, by law, two witnesses, or one witness with corroborating circumstances, are requisite, to warrant a conviction, if the requisition

be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, by which instruction they are bound.''

Leathers states that on the 31st of December, 1922, he, Satterly, McCrocklin, Muir and Alex. Shields agreed at Bloomfield to get some whiskey in Anderson county, and at the time Satterly, McCrocklin and Alex. Shields said they would go to Anderson county that night and ''look over the prospects.'' The three left Bloomfield saying they were going to Anderson county, and the next day Satterly told him they had been, but did not have much luck. That some five or six days later some of them told him they were again going to Anderson county on the night of the 8th, but witness did not go with them, and did not see them again until the 11th.

He states that on the 11th he saw Satterly, McCrocklin and Alex. Shields in Bloomfield and that Satterly said they were going that night to Anderson county to get the whiskey; he also said that Shrewsbury did not then know anything about the plans, but that Alex. Shields would go and see Shrewsbury and find out whether he could go with his truck. That later in the day he saw Alex. Shields and he said he had seen Shrewsbury and he had agreed to go. That it was arranged for the witness and the two Shields boys to start in the Shields' Ford touring car, and they were to meet Shrewsbury with his truck at the forks of a road about three miles from Bloomfield at 6:30 o'clock that night; that the four were then to proceed to another forks of the road a few miles away where they were to meet Muir, McCrocklin and Satterly. That witness and the Shields boys were an hour or more late in reaching the point where they were to meet Shrewsbury, and the latter was not there. They proceeded thence to the other point where they were to meet Satterly, McCrocklin and Muir, and there found those three with Satterly's sedan, and Shrewsbury in his truck.

That they all left this point and their destination was the Old Joe distillery, the Ford touring car and the Ford sedan going ahead of the truck in which witness and Shrewsbury went from that point; that witness did not see the others get into their machines, but after he and Shrewsbury had gone some distance in the truck they came upon Harry Shields and the Shields' touring car at a designated point, and the lights on the touring car had gone out. That machine was left on the road, and

Harry Shields got in the truck with witness and Shrewsbury and rode with them for two or three miles until they came up with the Satterly sedan, when Harry Shields got out of the truck and into the sedan. That the sedan again preceded the truck, and had electric lights on it, but only one of them was burning. That he and Shrewsbury then proceeded in the truck to a point a few miles from the Old Joe distillery, when they stopped the truck and waited on the road something like an hour because they were ahead of their schedule time; and that while they were so standing a machine passed them which which looked like a Ford touring car and had only one light burning on it. That they then after reaching the Old Joe pike proceeded toward the Old Joe distillery, and when they reached the little road that comes down from the warehouse at that distillery, about 200 yards therefrom, they did not stop but passed on and went a mile or more further on that pike, and then turned around and came back; that as they came back toward the distillery, at a point about four, five or six hundred yards therefrom, and just about opposite the house of Hawkins, he saw on the hill about the warehouse a light he first thought was a lantern, and then later saw something he took to be a flashlight; that Shrewsbury said he thought they were signals, and about that time witness saw flashes that looked like a report from a gun, and Shrewsbury said they were shots, and he had heard them. He says the arrangement was they were to stop with the truck at the little short road coming down from the warehouse, about 200 yards therefrom, and the others were to have the whiskey there and witness and Shrewsbury were to load it; but when they reached that point on the return trip they saw no whiskey and did not stop but went on up about a quarter of a mile and stopped near another little road, and remained fifteen or twenty minutes or longer. That while they were there some parties came up to the truck whom he did not recognize, except McCrocklin, and that he got into the truck and said, "Let's get away from here; there is a man killed on the hill." McCrocklin rode in the truck with witness and Shrewsbury to a certain road, at which point Satterly's sedan came up behind them, when McCrocklin got out of the truck and into the sedan. That when McCrocklin got into the truck he had a large gun in his hand and stated, "There is his gun."

That on the return trip the truck preceded the Satterly sedan, and witness and Shrewsbury remained in the truck until they reached the forks of the road about three miles from Bloomfield, at which point Harry Shields drove up alone in the Shields' touring car, the one that had been abandoned earlier in the night. That the touring car had no lights on it, and witness left the Shrewsbury truck at that point and got into the Shields' touring car. That Shrewsbury went toward Wakefield, where he was then living, and witness went on in the Shields' touring car to the Shields' home with Harry Shields. At the latter place witness got out of the Shields' machine and into Satterly's sedan, and at the same time Alex. Shields got out of the sedan and he and Harry Shields went toward their home, and witness, McCrocklin, Muir and Satterly proceeded to Bloomfield in the Satterly sedan and reached there between four and five o'clock in the morning.

On cross-examination witness admitted he had been promised immunity; and states that the distance from the point where they were to meet Shrewsbury to the Old Joe distillery was between 40 and 50 miles, and that the distance to that distillery from the point where they all met was 35 or 40 miles. That the last time he had seen either of the Shields boys that night until they got back within a few miles of Bloomfield was at the point where they all met, something like forty miles from the Old Joe distillery, except when he came up to Harry Shields on the road at the point where he left his touring car and rode a short distance with witness and Shrewsbury in the truck.

After admitting the evidence of this witness as to the conversation with McCrocklin, when the latter got into the truck, the court thereafter excluded it. But for the purposes of this opinion, without passing upon its competency, we shall treat it as a part of the evidence.

No other witness testified that either of these appellants was in any conspiracy, nor did any other witness testify to having seen either one of these defendants in Anderson county on that night or the day before. But it is said for the Commonwealth that there are certain facts and circumstances in evidence which must be deemed sufficiently corroborative of the testimony of Leathers to authorize a submission of this case to the jury.

It may be admitted that several incidents testified to by Leathers are corroborated by other testimony and other evidence; but whether such corroboration in those respects tends to connect either of these defendants with a conspiracy or participation in the homicide, is quite another thing.

For instance, it is shown that between one and two o'clock on the morning of January 12th three shots were heard in the neighborhood of the distillery.

It is likewise shown that a Ford touring car was seen standing on the road at or about the place Leathers says Harry Shields left his car, and that same was not there early next morning. But the car was not identified as the Shields' car.

It was likewise shown that Leathers was seen on a truck late that night only a few miles from the distillery where he says he and Shrewsbury were waiting; but clearly this furnishes no corroboration that either of these defendants was in a conspiracy or participated in the crime. It only shows Leathers was in the neighborhood of the distillery.

Again his statement that he saw from a certain point on the Old Joe pike the flashes from the shots is corroborated by evidence that the shots were heard by others about that time, and that from the point indicated by him the flashes might have been seen. But this does not indicate the presence of either of these defendants upon that occasion, or that they were parties to any conspiracy.

Again his statement that McCrocklin had the dead man's pistol is corroborated by a witness who found that pistol at a place indicated by McCrocklin, and the pistol is identified as that of the decedent. This likewise furnishes no corroboration as to either of these defendants.

Again his statement that Satterly, McCrocklin and Alex. Shields agreed to go to Anderson county on January 1st on an inspection tour, is corroborated by the evidence of witnesses that they were upon that day seen in Anderson county, and in the neighborhood of this distillery. But that was ten days before the homicide.

Again his statement that Shrewsbury met them in the truck is corroborated in a measure by the evidence of a witness with whom Shrewsbury lived, that he had left in the truck after dark on the night of January 11th and returned some time later that night. It is apparent this does not corroborate any statement as to the connection

of either of these appellants with the conspiracy or the homicide.

Again his evidence as to the presence of the Satterly sedan in the neighborhood of the distillery is corroborated by a witness who says he saw about 11:30 o'clock that night a Ford sedan in that neighborhood which had only one light burning. This, however, is only a corroboration of his statement to the effect that the Satterly sedan was in that neighborhood, and there is no claim by the witness giving this corroborating statement that he recognized any occupant of the sedan.

Again there is evidence that a certain small grip containing tools which was found in Satterly's car after the homicide had been seen a few days prior thereto near the Old Joe distillery when some persons were repairing a car. Conceding this to be a corroboration of Leathers' statement that some of the parties had made these preliminary trips to the neighborhood of the distillery, there is yet no identity of either of these defendants as being with or in the Satterly car at that time; and if there was such evidence it would not even then corroborate his statement either that they were members of a conspiracy or that they were connected with the homicide.

Again certain tools which were found the day after the homicide in the locality of the distillery were identified as belonging to a garage owner at Bloomfield, and it was shown that McCrocklin worked at that garage and Leathers had a key to it. Assuming, therefore, this to be corroboratory evidence as to some of the parties, it certainly fails to reach either of these defendants.

Again the Satterly sedan is shown to have had on it that night four different makes of tires, and that those tires made four different and distinct kinds of tracks or impressions, plainly discernible in soft going, and that there had been recent rains. About a quarter of a mile before reaching the short road going up from the Old Joe pike to the distillery there is a road known as Montgomery lane, which also goes in that general direction, and rather to the side or to the rear of it. In that lane on the day after the homicide were found tracks made by a machine and showing four different kinds of impressions. On that day certain witnesses started and followed those impressions back toward Bloomfield, and at places here and there along the route they found very distinct duplicates of these same impressions they had seen in Montgomery lane; they continued to follow them,

now and then finding the same tracks, until they came to the gate of Satterly's home, where they again saw in the entrance to that place the same kind of impressions. After the officers took charge of the Satterly car, an impression of each of these tires was made on cardboard, and at the trial those impressions were identified by the witnesses as similar to the impressions found in Montgomery lane and along the route from there to Satterly's home.

This evidence is emphasized by the testimony of a garage owner at Bloomfield that the night before the homicide he sold to Satterly, and placed on his car, a new tire of a certain kind, and identifies the impression made by that tire. These things are corroborative of Leathers' statement that Satterly's sedan went that night to the neighborhood of the Old Joe distillery, but no witness, other than Leathers, says that either of these defendants was in the Satterly sedan that night at or near the distillery, or elsewhere.

It has been said that the proper test in determining whether there has been sufficient corroboration of the testimony of an accomplice under the provisions of our Code, is to first eliminate the evidence of the accomplice, and then if upon examination of all the other evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. Commonwealth v. McGarvey, 158 Ky. 570; Stone v. State, 98 A. S. R. 169 and note.

Applying that rule to the facts here, and discarding from our minds wholly the testimony of Leathers, what evidence of guilt of either of these defendants may be said to remain?

Eliminating that evidence there is nothing to show that either of these defendants was any nearer to the Old Joe distillery on the night of the 11th of January than their home some fifty miles away; eliminating his evidence and we have only left the fact that one of these defendants was seen in Anderson county in the locality of the Old Joe distillery ten days before the homicide.

Manifestly the two quoted sections of the Code would be wholly meaningless if such trivial things may be treated as corroboration of the testimony of an accomplice. The courts have nothing to do with the wisdom of such statutory provisions; it is their duty only to enforce them as they are written, when valid.

We are impelled, therefore, to the conclusion that as to these two appellants there was no such corroboration of Leathers' testimony as authorized a submission of this case to the jury; and under the mandatory provisions of section 242 the trial court should have directed a verdict of not guilty.

The judgment is reversed with directions to grant the appellants a new trial and for further proceedings consistent herewith.