## Smith v. Commonwealth.

(Decided February 12, 1932.)

A. J. OLIVER and JOHN H. GILLIAM for appellant.

J. W. CAMMACK, Attorney General, and BASIL P. COOPER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Affirming.

Appellant was found guilty of being an accessory before the fact to the crime of arson, and sentenced to serve five years in the penitentiary. He appeals.

The sole ground for reversal is that there was no corroboration of the testimony of the accomplice who burned the building implicating the appellant as the one who employed him to set fire to the home which was burned. If this be true, then appellant correctly argues that, under section 241 of the Criminal Code of Practice, he was entitled to a peremptory instruction. His contention requires a somewhat detailed statement of the evidence. About midnight on Sunday, September 21, 1930, a dwelling house in Scottsville, Ky., belonging to Elbridge Bradley, was burned. It had just been completed, and had been leased to Ed Lance, a white man, who at the time it was burnt had moved some of his be-

longings into it purposing to move his family in on Monday, the 22nd. On the afternoon of that Sunday, a negro ball team from Adairville played the Scottsville negro ball team in Scottsville. The appellant, a negro, was the umpire. When the game was over, it was found that the gate receipts were not sufficient to pay the guarantee of $7.50 given the Adairville ball team, and quite a discussion arose while efforts were being made to raise the guarantee. During this time, the appellant was seen by the commonwealth's witnesses to engage in conversation with Jessie Wather, the negro who burned the house, and whose testimony implicating appellant in the crime it is claimed is uncorroborated. The commonwealth's witnesses say that these conversations were held between the appellant and Wather separate and apart from the crowd, for which reason the witnesses are unable to state what was their content. Appellant admits that he may have talked to Wather in the afternoon, but says that if he did it was not separate and apart from the crowd, but in the crowd. Wather testifies that these conversations did take place as the other commonwealth's witnesses say they did, that appellant in such conversation opened up negotiations looking to the employment by him of Wather to burn the house, but that he, at that time, declined to have anything to do with it. Appellant denies that he solicited Wather to burn this house. At all events, the crowd broke up and appellant went to his home for supper. About 8 o'clock he was seen by a commonwealth's witness in the neighborhood of the house which later burned. Appellant denies that he was in that neighborhood. Appellant was a stock trader, and he had earlier in the evening arranged with Lon Emery, who also had some stock for sale or trade, to go to Bowling Green that night, leaving Scottsville about midnight in order to arrive early in the morning in Bowling Green to be ready for the market. Emery testifies that about a quarter to 10 that night appellant showed up at Emery's house to get him in order to go on to Bowling Green. This was somewhat earlier than Emery had expected him, and Emery was in bed. Appellant told Emery that while Emery was dressing, he would go down to the ball park and wait for him, and this he did. When Emery later met the appellant at the ball park, it was suggested that as it was a long ride to Bowling Green and they were tired and sleepy, a little drink would not do them any harm, so they set out to search the neighborhood for

some liquor. They met up with Wather and another negro named Shine Hogan and appellant and Emery engaged their services to find the liquor for them. Emery and Hogan testified, as did also Wather, that appellant at this time had a conversation apart with Wather. Hogan says that he heard appellant say to Wather that "no one lived there," but beyond this neither he nor Emery was able to state what the conversation was about. Wather testifies that appellant then hired him to burn the house. Appellant denies that this conversation took place. Wather and Hogan then left Emery and appellant at the ball park, and went off ostensibly to look for liquor. While they were gone, Wather was seen to set fire to the house, and this information was at once conveyed to the authorities. Wather returned to where appellant and Emery were, having been unable to find any liquor. On appellant's invitation, Wather joined him and Emery and set out with them for Bowling Green. Appellant was riding a tender-footed horse, and, when they reached Half Way, the horse had become so lame that appellant thought it desirable to shoe it. Just where he procured the shoes is not clear from this record; but he got a man whose truck had broken down at this place to turn on his lights, and by their aid he shod his horse. While he was shoeing the horse, the authorities in pursuit of Wather came up, arrested Wather, and took him back to Scottsville. The witnesses testify that appellant showed no surprise, concern, or interest in Wather's arrest, but continued the shoeing of his horse without even so much as putting the hoof down to see what was happening to his friend. After the horse was shod, appellant and Emery continued their journey to Bowling Green, transacted their business there on Monday, and on the evening of that day started back towards Scottsville. When near Half Way, appellant met his father and Ed Lance. Lance and appellant had some conversation, the purport of which is not disclosed in this record, but appellant testifies that his father told him that he was being talked about in connection with the burning of the Bradley house, and that a lawyer in Scottsville had advised that appellant stay away from Scottsville, at least until he had been indicted. Appellant does not produce either his father or this lawyer to corroborate him in the statement concerning this advice. On receiving this information, appellant turned aside and went over into Simpson county, where, on Thursday, he was found by the officers

of the law and arrested. The officers claim that appellant undertook flight when they came upon him. Appellant denies this. Wather was convicted on his confession of burning the Bradley house and sent to the penitentiary. In his confession, he not only stated that he had been hired by appellant to burn the house, but also that appellant had arranged everything at the place so that all he had to do was to set a match to the tinder prepared. It may be said in passing that the good faith of his confession and implication of the appellant was put in issue by appellant's proof. It may also be said that Ed Lance, now confined in the Atlanta penitentiary on a bootlegging charge, lived next door to appellant, and it is attempted by insinuation on the part of the commonwealth to show that appellant and Lance's wife had been unduly intimate, and that appellant had the Bradley house burned in order to keep Lance from moving away from where he then lived. In this state of the case, appellant vigorously insists that there was no corroboration of Wather's testimony that he had been hired to burn this house by appellant. Boiled down, the corroboration is this: That appellant was seen in several conversations with Wather that day and night; that he was seen in the neighborhood of the house about 8 o'clock that evening; that he was heard to say in a conversation that night with Wather that nobody lived there; that he showed no concern when Wather, his friend, was arrested; and that later, when informed about the burning, he fled. Of course he either denies these things or attempts to explain them, but the jury did not have to believe either his denial or his explanations. The strongest link in this chain of corroboration is the flight. Such evidence is admitted for the purpose of showing consciousness of guilt, and to establish a presumption of guilt. The rule is that if the testimony of the accomplice be eliminated from the case and the testimony of the other witnesses tends to connect the defendant with the commission of the offense, the accomplice has been corroborated. Commonwealth v. McGarvey, 158 Ky. 570, 165 S. W. 973; Shields v. Commonwealth, 203 Ky. 118, 261 S. W. 865; Mulligan v. Commonwealth, 202 Ky. 841, 261 S. W. 616. The corroboration must extend to every fact necessary to establish the fact that the offense charged was committed and that the defendant was the perpetrator. Miller v. Commonwealth, 78 Ky. 15, 39 Am. Rep. 194. Measured by this rule, the evidence in this

case presented a sufficient corroboration of the accomplice Wather to carry the case to the jury. The evidence of the commonwealth, aside from the testimony of the accomplice, established these facts. Wather burned the premises. He was seen to apparently set fire to prepared tinder. Appellant had been in the neighborhood of this dwelling an hour or so earlier. He had been seen in at least two conversations with Wather, in one of which he was heard to say that "no one lived there." He acted very strangely when Wather was arrested, evidencing no concern in the fate of his friend, contrary to what would ordinarily be expected from a companion. And then on hearing from his father that Wather had confessed, and that he had been connected with the burning, he fled; such flight being a presumption of guilt. This evidence, if believed by the jury, as it was, established that an offense had been committed, and that the appellant was an accessory of the perpetrator. Such being the case, the evidence sufficiently corroborated the testimony of the accomplice within the rule, and the lower court did not err in submitting the case to the jury. Its judgment is therefore affirmed.