# Robinson v. Commonwealth.

Dec. 20, 1940.

As Modified on Denial of Rehearing March 28, 1941.

C. R. Luker for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The Grand Jury of the Laurel Circuit Court jointly indicted Melvin Robinson, Leander Reed and Rowland Gill for the crime of feloniously tying down a train signal apparatus on the line of the Louisville & Nashville Railroad Company as denounced in Section 807, Kentucky Statutes. In separate counts the indictment charged each of the defendants with committing the offense and the others with being then and there present and aiding and abetting in its commission. On a separate trial defendant, Melvin Robinson, was convicted, his punishment was fixed at five years' confinement in the penitentiary and he prosecutes this appeal from the judgment entered on the verdict.

Defendant argues that the court erred in refusing to quash the indictment because the grand jury which returned it was not drawn from the wheel in the manner provided by Section 2243, Kentucky Statutes. There had been a former trial resulting in a hung jury and the

record shows the motion to quash was not made until the case was called for the second trial. Therefore, the motion came too late. In Brannon v. Com., 215 Ky. 589, 286 S. W. 785, it was written that a motion to quash under Section 157 of the Criminal Code of Practice must be made at the time defendant is arraigned, or if there be no arraignment, upon the call of the indictment for trial; and if made thereafter, it comes too late and the error, if any, is waived. Also see Sloan v. Com., 211 Ky. 318, 277 S. W. 488.

The only grounds urged for reversal which we deem worthy of consideration are: (1) There was no evidence corroborating the accomplices which tends to connect the defendant with the crime, therefore he was entitled to a directed verdict of acquittal; (2) the court failed to instruct on the misdemeanor included in the felony charged in the indictment; (3) newly discovered evidence entitled him to a new trial; (4) incompetent evidence was admitted against defendant.

The contentions advanced require a recital of the evidence. There were three admitted accomplices, one of whom, Ed Lunsford, for some reason not shown in the record, was not indicted. The accomplices testified that about sundown on the afternoon of January 26, 1939, they got together at a railroad crossing known as Altmont, located in Laurel County about one mile from East Bernstadt; that in order to require a freight train to stop at this crossing so they might board it and ride to Corbin, some twenty miles distant, they agreed to tie down a railroad signal in Rattle Snake cut, which they knew would cause a passing train to make a brief stop near the crossing; that early in the afternoon of that day they were at defendant's home, which was not distant from the Altmont Crossing, and defendant cut five or six feet from his mother's clothesline with which he later tied down the railroad signal. The train did not stop at the tied down signal; however, it was traveling slowly due to the grade of the track at that point and all four of the boys boarded it and rode to Corbin.

Mr. and Mrs. Thomas Eaton, grandparents of Leander Reed, testified that about 10:00 o'clock on the night of January 26, all four of these boys left the Eaton home in Corbin. Millard Essex and F. W. Horsley, two railroad policemen, testified they had received word this

signal had been tied down; that the four boys were in the railroad yards on the night of January 26, between 10:30 and 11:00 o'clock; that when they attempted to arrest them all escaped by running with the exception of Reed, whom they caught and put in jail. These officers testified they got within five yards of defendant and recognized him when he fled under the depot lights. Daw Ponder, signal maintainer for the railroad company, testified he was notified this signal was tampered with and that he removed the wire from the signal at 9:30 on the night of the 26th.

Defendant admits the accomplices were at his home between 2 and 3 o'clock on the afternoon of the crime, but denies he obtained the wire, or that he was in the company of the other three boys at the railroad crossing, or that he tied down the signal, or that he had any connection with the crime. He also denies that he went to Corbin with them on that night and his defense was an alibi. By several witnesses he proved that he went to the home of Roy Reed about 5:30 on the afternoon of January 26th, where he listened to a prize fight over the radio and returned to his home about 10:30 that night.

The trial judge instructed that Gill, Lunsford and Reed were accomplices and that defendant could not be convicted upon their testimony unless corroborated by other evidence tending to connect him with the commission of the crime, and that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof. No complaint is made of this instruction as it is in conformity with Section 241, Criminal Code of Practice, but defendant urges that no evidence was introduced by the Commonwealth corroborating the testimony of the accomplices. In determining whether an accomplice's testimony has been sufficiently corroborated under Section 241, the test is to eliminate the evidence of the accomplice, and if upon examination of all of the remaining evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the crime, there is sufficient corroboration. Shields v. Com., 203 Ky. 118, 261 S. W. 865; Rose v. Com., 249 Ky. 103, 60 S. W. (2d) 374.

After eliminating the evidence of the accomplices, the only testimony which corroborates them is that of the two officers who testified defendant fled when they

approached him and the other three boys on the night of the crime when they arrested Reed in Corbin and the testimony of Mr. and Mrs. Eaton that the four boys were at their home in Corbin that night. Such testimony, when considered in connection with the denial of the defendant that he was not in Corbin that night, together with his flight at the depot when the officers approached, corroborates the accomplices. The rule is stated in 22 C. J. S., Criminal Law, 1404, Section 812:

"Sufficient corroboration of the testimony of an accomplice to warrant a conviction may be furnished by the suspicious conduct of accused, such as flight after the crime was committed, or at the time of arrest or accusation, or attempts to bribe a witness."

In Smith v. Com., 242 Ky. 399, 46 S. W. (2d) 513, it was written that evidence of flight is admitted to establish consciousness of guilt and a presumption of guilt. When the Smith case was decided, the rule in this jurisdiction was that the corroboration of an accomplice must extend to every fact necessary to establish the offense charged was committed and that the defendant was the perpetrator. But in Williams v. Com., 257 Ky. 175, 77 S. W. (2d) 609, the rule was relaxed to the extent that the corroborative evidence need not be of itself sufficient to establish defendant's guilty connection with the perpetration of the crime, but need only tend to connect him with its commission. See Mauk v. Com., 268 Ky. 237, 104 S. W. (2d) 955. In the Smith case it was held that flight together with other corroborative evidence established the offense charged and proved that the defendant was the perpetrator.

We have reached the conclusion that the flight of Robinson in the instant case when the officers approached him and the accomplices at the time they were successful in arresting Reed, when taken in consideration with Robinson's denial that he was in Corbin that night, and with the testimony of Mr. and Mrs. Eaton that he and the other boys were at their house, was sufficient corroboration of the testimony of the accomplices to connect him with the commission of the crime. We find courts of other jurisdictions have held that the flight of the defendant with other unusual behavior on his part sufficiently corroborated the testimony of the accomplices to sustain a conviction. People v. Rice, 29 Cal.

App. (2d) 614, 85 P. (2d) 215; Mallett v. State, 165 Ark. 613, 263 S. W. 384; Modica v. State, 94 Tex. Cr. R. 403, 251 S. W. 1049; Prophett v. State, 25 Ala. App. 20, 141 So. 257.

It is argued the court should have instructed on the misdemeanor of injuring property without a felonious intent, an offense denounced in Section 1256, Kentucky Statutes, since the evidence showed defendant had no malicious itent when he wired down this signal, citing Com. v. Wells, 112 S. W. 568, 33 Ky. Law Rep. 964, and Thacker v. Com., 85 S. W. 1096, 27 Ky. Law Rep. 620. In the former case, Wells removed a switch light from the railroad in order to have a light to aid him in going home after dark and was indicted under Section 807, Kentucky Statutes, which is the same section under which the present indictment was drawn. Section 264 of the Criminal Code of Practice in effect provides that in an indictment charging a felony if the proof shows any element is lacking making the offense a felony, the defendant may be convicted of a misdemeanor, if such is included in the offense charged. The court held that as there was no evidence that Wells removed the light to interfere with the operation of trains, Section 264 entitled him to an instruction on the misdemeanor of taking or injuring property without a felonious intent. In the Thacker case the evidence shows that the defendant while stealing a ride innocently turned an air cock, not knowing it would stop the train and without intending to stop it. Since Thacker had no intention to do an act which would stop the train, it was held he was entitled to a misdemeanor instruction. But in the instant case the signal was tied down for the very purpose of stopping the train and this is denounced as a felony under Section 807, hence the court properly refused to instruct on the misdemeanor contained in Section 1256.

By newly discovered evidence defendant would prove that it was 8:05 P. M. when the officers arrested Reed in Corbin and not between 10:30 and 11:00 o'clock as they testified. The actual hour of Reed's arrest plays no important part in the case and such evidence could only impeach the Commonwealth's witnesses on an immaterial point and could not be reasonably expected to change the verdict on another trial. Therefore, the trial judge did not err in failing to grant defendant a new trial on the ground of newly discovered

evidence. Pope v. Com., 247 Ky. 208, 56 S. W. (2d) 972; Burnett v. Com., 249 Ky. 112, 60 S. W. (2d) 342.

There is no merit in defendant's contention that the court erred to his prejudice when it permitted Lunsford to testify that Robinson had a half-pint of liquor at the crossing where the crime was perpetrated and that the four of them were going to Corbin to get some bicycles; or in permitting Reed to testify that some liquor was gotten from defendant's home when the wire was obtained there. The mere fact that defendant had a half-pint of whisky in his possession, which for all this record shows was not illegal whisky, could not have prejudiced his case. The testimony about the liquor being obtained from the defendant's home, also the testimony concerning the bicycles, was dropped innocently by the Commonwealth's witnesses and it is apparent the attorney examining them had no idea of bringing out such answers. No one would have thought the expression ''the boys were going to Corbin after some bicycles'' inferred that they were going to steal some bicycles. We cannot see the materiality of such testimony and defendant's objection to it should have been sustained, but as it did not prejudice his substantial rights, the court did not commit reversible error in admitting it. Section 340, Criminal Code of Practice; Hunt v. Com., 240 Ky. 293, 42 S. W. (2d) 315; Buttree v. Com., 242 Ky. 623, 47 S. W. (2d) 73; Triplett v. Com., 245 Ky. 149, 53 S. W. (2d) 348.

Perceiving no error prejudicial to defendant's substantial rights, the judgment is affirmed.