# Miller v. Commonwealth.

Jan. 24, 1941.

Jas. C. Carter, Jr., for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant, along with Mayes and Haynes, was charged with breaking into the store of one Quinn and stealing a quantity of merchandise. When the indictment was called the commonwealth elected to try appellant. A jury returned a verdict of guilty, inflicting the minimum fixed by Kentucky Statutes, Section 1164, one year in the penitentiary. In support of motion for a new trial appellant set up seven or more grounds; most of these are abandoned on appeal here, and it is only argued the judgment should be reversed, because:

(1) The evidence was insufficient to support the verdict, since the inculpatory testimony was given by an accomplice, and not corroborated, citing Criminal Code of Practice, Sections 241 and 242.

(2) The conviction was had on circumstantial evidence, which was more consistent with defendant's innocence than guilt, citing Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d), 190, and Tarkaney v. Commonwealth, 240 Ky. 790, 43 S. W. (2d) 34.

The first-named case was affirmed; the second reversed, both holding to the rule that conviction may be had on circumstantial evidence alone, but must be of such character that it may not be reconciled with the presumption of innocence, and of such force as to exclude every reasonable hypothesis of innocence. For the purpose of discussing this case, the rule as stated may be admitted, and likewise that there must be sufficient corroboration of the testimony of an accomplice to authorize conviction. We think a statement of the facts will demonstrate that neither contention is of such merit as to justify us in disturbing the judgment.

Quinn conducted a general store in Monroe county. He locked his store on Saturday night, March 16, 1940, and on his return the next morning discovered that some person or persons had broken a glass out of a rear window, raised it, and, from appearances, had removed through the front door, sugar, flour, lard, grass seed, and other merchandise, including a cross-cut saw. Signs indicated that a truck had been parked near the store. Quinn at once complained to the sheriff, who with others repaired to the store and made examination. The officers had no difficulty in tracking the truck, the wheels of which made a peculiar mark.

In their investigation they ran across Mayes, who

directed them to the home of Haynes, where they found a truck, the tires of which made identical marks. This truck which belonged to Haynes, was pulled up to the side of the barn, and near it wagon tracks, which led to Miller's house, where the officers went and found Miller. They told Miller that they had come for "the stuff that was stolen, and that he had helped to carry away," and appellant answered, "All right, look anywhere." A casual search led them to a room which was not used as living quarters, where they found 19 pairs of overalls, a quantity of sugar that had been removed from Quinn's sacks and poured into glass jars. A quantity of lard had been melted and placed in other receptacles; they also found cigarettes, chewing gum and other articles. They found timothy seed, but did not locate a sack of clover seed or the saw. The recovered goods were returned to Quinn.

Miller lived on Haynes' place, and was working for him. He freely told the officers that he and Mayes had brought the goods to Haynes' place, later procuring a wagon team and hauled them to Miller's home. The sheriff said that Miller said, "I am guilty. I didn't go into the store, but backed out. I want to get out of this the best way I can. I am innocent of stealing the stuff," and related his activities, which do not differ materially with such as told by Mayes, the accomplice.

Mayes admitted that he broke into the store. He got in company with Miller in Glasgow on Saturday evening. They had according to Mayes a week before agreed on robbing the store. They met at a service station and proceeded to Quinn's place, Mayes driving the truck, which he parked "Close enough so that I could get the stuff, carry it out and put it in." Mayes then went into the store, but when he came back, Miller said that the "dogs were making too much racket, I am going; you can pick me up." Mayes then describes what he got from the store. He finished loading, and drove about a mile and picked up Miller, who was waiting for him.

The two then drove to Glasgow looking for Haynes; found him, and the three, Miller driving part of the way, went to Haynes' barn. The truck was out of gas, so Miller got Haynes' team, and a wagon from one Butler, and the merchandise was hauled to Miller's home,

with the exception that Haynes bought a sack of clover seed, giving Miller a check for $5.50, which was cashed for him on Sunday morning by a merchant. Miller says this check was for work he had done for Haynes. Mayes and Miller returned then to Haynes' home, where Haynes paid Mayes a "small amount" and Miller took Mayes back to Glasgow. The foregoing closed the commonwealth's testimony, and the court overruled appellant's motion to direct a favorable verdict.

Miller, thirty-two years of age, denied that he had ever made any agreement with Mayes to rob Quinn's store. He says that on the Saturday he and Haynes took some livestock to town; he left Haynes in town, and drove the truck back to the service station and met one Green, for whom he hauled some stock, and then returned to the station; left the truck, went to town and met Mayes on the street around 7 o'clock or later. Mayes asked him to go with him to see his girl; Miller declined, and went to the home of his brother-in-law, and had supper. He then went "up into town looking for Haynes, who was not ready to go home." Miller then went back to the service station; this was about midnight; some one had taken the truck, but he waited for it to "come in" and when it returned Mayes was driving. They put in gas, and Mayes said "Let's go for a ride," and appellant, who says he was "drinking some," agreed, and the ride took them to Quinn's store. Mayes said: "We are going to rob that store." Miller said, "No we aint, you might but I'm not going to," and Mayes stopped the truck, and went on and turned around near the store. Miller walked up the road to a bridge, and Mayes later came along and picked him up, and they returned to Glasgow. Miller told Mayes to go pick up Haynes, and they found him at a gambling joint, and the three went to Haynes' home, and the question came up, "What was we going to do with the stuff." Miller suggested that he take it home and store it until Mayes could come and get it. "I asked him if he would sell me any of the stuff, and he said he would, and I said I would buy it at half price." He then describes how he moved the "stuff" into the house, and how the officers came and got it on Sunday morning, without resistance on his part. He says out of the $5.50 check (of Haynes) he bought a pack of cigarettes, and gave Mayes the balance "for payment of the things," which

he says he knew had been stolen from Quinn's store. It is also developed that he had Quinn's cross-cut saw, but overlooked it, and failed to deliver it to the officers. He admits emptying the sugar sacks, and lard cans after the lard was heated, saying "it came out easier to melt it."

The foregoing is substantially the evidence relied on by accused in his defense, except that it is fair to say that he introduced several acquaintances who testified that his previous reputation was good. At this point the renewed motion for a peremptory was overruled.

We repeat what was said in the outset, that a statement of the facts answers contentions made by counsel in behalf of appellant. The proof adduced constitutes appellant both accessory before and after the fact, if not a principal, and under our statute (Section 1128) the former is equally guilty with the principal, though the latter be "not taken or tried."

As to the application of the Code sections supra, and which counsel contends should have justified the court in sustaining motions for a peremptory, it is apparent that counsel has failed to read some of our more recent decisions giving true import and meaning to the Code sections involved. It is not necessary to discuss the application of Section 240, which provides that a confession out of court will not warrant a conviction, unless there be evidence or other proof "that such an offense was committed." Our recitation of the facts and reference to Commonwealth v. Harrison, 241 Ky. 88, 43 S. W. (2d) 354; Caruth v. Com., 251 Ky. 143, 64 S. W. (2d) 495; Robey v. Commonwealth, 243 Ky. 407, 48 S. W. (2d) 822, afford a most convincing answer to the argument.

It is true that in the cases cited, and in others written previously to those we are about to mention, construing Section 241 of the Criminal Code of Practice, we held the rule to be that in testing or determining whether or not an accomplice's testimony was sufficient to uphold a conviction, we should eliminate the accomplice's evidence, then if there be sufficient evidence tending to connect the accused with the crime, there is corroboration. This is still the rule. However, the rule that the corroborative testimony must extend to every

fact necessary to establish that the accused was the perpetrator (Smith v. Commonwealth, 242 Ky. 399, 46 S. W. (2d) 513) has been materially modified. Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609. In that case we held that it was not essential under the Code provision, supra, that the corroborative testimony be of itself sufficient to establish guilty connection of the accused with the commission of the charged offense, but need only to tend to so connect him. This ruling was followed in Mauk v. Commonwealth, 268 Ky. 237, 104 S. W. (2d) 955, and in the more recent case of Robinson v. Commonwealth, ... Ky. ..., ... S. W. (2d) ..., and in which we held, as was true in the Smith case, that flight from the scene of the crime, with other corroborative testimony, tended not only to establish the commission of the offense, but to connect accused with its commission.

Here we have the confession, quasi though it be, which was competent; the testimony of the officers who found appellant in full possession of the stolen goods; the activities of appellant in connection with Mayes, though, according to his views, not a confession of guilt; these and other portions of the evidence authorized submission to the jury even though we disregard the testimony of Mayes.

On the whole case we find no error; on the other hand we are of the opinion that accused received a fair and impartial trial.

Judgment affirmed.