## Hunt v. Commonwealth.

Oct. 28, 1941.

Sidney Trivette for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Ernest Hunt, was jointly indicted with Truman Adkins and Junior Smith by the grand jury of Pike county at its September, 1940, term, charging them with the crime (denounced by Section 1164, Kentucky Statutes) of unlawfully and feloniously breaking into and entering the oil and millhouse of Miles Plymale, with the felonious intent to steal and carry away gas therefrom. Upon his separate trial on the charge (had on May 9, 1941), appellant was convicted and sentenced to one year's confinement in the state penitentiary, the minimum punishment fixed by the statute.

From that judgment appellant has appealed, seeking its reversal upon the following grounds: (1) That the defendant was due a peremptory instruction; (2) that the defendant can not be convicted on the evidence of an accomplice; (3) that guilt must be established beyond a reasonable doubt; and (4) that defendant must have knowledge of the crime before conviction.

The nature of the first two of these grounds is such as call for a brief recital of the evidence.

The facts are, as gathered from the uncontradicted testimony, that on the night following the 1940 August primary election the oil and millhouse of Miles Plymale, located on Long Fork of Johns Creek in Pike county, Kentucky, was, at about midnight, broken into and a five-gallon can and nearly five gallons of gasoline were stolen therefrom and carried away by Truman Adkins and Junior Smith, jointly accused with the appellant with the commission of this crime.

Further it is shown by the testimony that shortly before this charged offense was committed, the appellant, Ernest Hunt, Truman Adkins and Junior Smith were out driving in a car (belonging to Hunt's brother) along Johns Creek, making thereon several trips between the lower forks of the creek, near where appellant, Junior Smith and Adkins lived, and the oil and millhouse of Miles Plymale, about one mile distant up

the creek, above its forks. Thus they passed the mill-house several times before Arkins and Smith left Hunt in his car, at a point about a quarter of a mile beyond the millhouse, and went down and broke into the mill-house and took therefrom both a five-gallon oil can found in the store and about five gallons of gas, which they state they syphoned into the can from a barrel of gasoline there kept for sale by Plymale.

Upon appellant's separate trial on this charge, Junior Smith testified as an accomplice witness for the commonwealth that the appellant, Adkins and he were driving up and down along Johns Creek on the night this crime was committed and that as they were driving, Ernest Hunt proposed that they steal some gas from Plymale's millhouse; that following Hunt's suggestion, they drove back up the creek to a point about a quarter of a mile beyond Plymale's and stopped, when the appellant handed him and Adkins a two-gallon gasoline can he carried in the car and told them to go down to Plymale's millhouse and steal some gas and bring it back in the can to the car, where he would wait until they returned.

It is further testified by this accomplice witness, Junior Smith, that after breaking into the millhouse and there finding and filling the five-gallon can belonging to Plymale with his gas, they returned to the car, carrying both it and the two-gallon can given them by Hunt, found Hunt waiting there for them and gave him the stolen can and gas, which he took and emptied into his car tank, without comment made or question asked as to their bringing back the two cans and more than double the amount of gas he states Hunt had directed them to steal and bring back in the two-gallon can he gave them.

Further it is testified both by Smith and Adkins that after Hunt had taken the five-gallon can and emptied the gas into his car tank, they took it a short distance up the road and hid it by throwing it over the fence into some bushes in the garden of Eliza Bostic.

Further, it is nowhere denied in the evidence that Hunt could see or knew of their carrying the emptied can away for the purpose of hiding it, thus destroying the evidence of their theft of it.

Both Smith and Adkins upon their earlier separate

trial on the indictment, wherein they were jointly accused with appellant with the commission of this crime, pleaded guilty and were thereupon sentenced to imprisonment therefor.

The evidence relied upon by the commonwealth as corroborating the testimony of the accomplice, Smith, is to the effect (as testified by Hunt himself) that he, together with Adkins and Smith (the three persons joined in the indictment charging them with the commission of this offense), with some other boys, were riding up and down Johns Creek on the night in question; that after the other boys had left them, they continued to ride around until their car stopped about a quarter of a mile above Plymale's millhouse because of running out of gas and that they decided to obtain some gasoline from Plymale's nearby millhouse, who occasionally sold gas to travellers at the rate of 25c a gallon.

Appellant testifies that upon discovering they were out of gas and stalled about a quarter of a mile above the millhouse, he told the boys they would either have to get some gas or stay out on the road all night, when the accomplice, Junior Smith, offered to go down to Plymale's millhouse and get it and that he then gave Smith 50c with which to buy two gallons of gas from Plymale and an empty two-gallon can he had in which to bring it back; that Truman Adkins went with Smith down to Plymale's, where they remained about half an hour; that when they returned to the car, where he, as agreed, was waiting for them, they brought with them not only the empty two-gallon can he had given them, but also a five-gallon can nearly filled with gasoline, which they gave to him and which he took and poured into the tank of his car, without a question asked as to how they got the can and nearly five gallons of gas, when he had, a short time before, given them, because apparently they had no money, 50c with which to buy two gallons of gas and also that after he emptied the five-gallon can, the boys took it and hid it away in the nearby garden of Eliza Bostic; that they thereupon drove right by Plymale's millhouse as they went back to Hunt's house, near where they spent the night "laying out in the car."

Hunt, despite these suspicious and somewhat incriminating circumstances (tending to connect him with the offense) under which the five gallons of gas were obtained from Plymale's store, testifies that he did not

have anything to do with breaking into the storehouse or stealing or taking therefrom this five-gallon can and gas.

Adkins, testifying as a witness for the appellant, states that while he and Smith broke into Plymale's storehouse and stole his gas, as testified to by Smith, yet, notwithstanding the circumstances related as to their getting it and turning it over to Hunt, he did not think that Hunt knew that they had not bought it, as he says Hunt directed them to do and for which he had given him 50c.

The accomplice witness, Smith, also states that they did not run out of gas at the time stated and that lack of gas was not their reason for breaking into Plymale's storehouse and stealing it therefrom, but that it was done in accordance with a plan suggested by appellant, Hunt, that they steal the gas.

The evidence is further for the commonwealth that Mr. Phillips, an uncle of appellant, did, after the commission of this crime was discovered and the appellant, Adkins and Smith were being accused of it, go with Hunt and Adkins down to see Plymale and tried to get the case settled and dropped by him upon Hunt and the other boys paying him for the gas.

The appellant admits that he went with his uncle on this mission.

Upon the conclusion of the commonwealth's introduction of evidence, as well as upon the conclusion of the introduction of all the evidence, appellant moved for a directed verdict on the ground that the inculpatory testimony offered by Smith, an accomplice, was not corroborated by other evidence tending to connect the defendant with the commission of the offense, as required by Section 241, Criminal Code of Practice, reading:

> "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

The learned trial court, overruling appellant's motion for a directed verdict based on such contention, among other instructions given the jury, instructed it by its instruction No. 2, given practically in the language of

Section 241, Criminal Code of Practice, that Junior Smith was an accomplice and that the defendant could not be convicted upon his testimony unless corroborated by other evidence tending to connect the defendant, Ernest Hunt, with the commission of the offense charged and that the corroboration is not sufficient if it merely shows that the offense was committed, and the circumtances thereof.

While this instruction is not criticised, since it is practically in the very language of the code provision, Section 241, as set out supra, the defendant yet urges that no evidence was introduced by the commonwealth corroborating the testimony of the accomplice, Smith.

As to this, the commonwealth, on the other hand, contends that the testimony given as to the methods pursued in obtaining the gasoline, the circumstances shown surrounding its obtention, the appellant's conduct in waiting nearby for the return of Smith and Adkins, his admitted taking from them the five-gallon can of gas and appropriating it by pouring it into his car tank and the action of the accomplices, Smith and Adkins, in hiding away the stolen can evidencing their theft (done with his knowledge and acquiescence) constitute evidence, other than that given by the accomplice, tending to connect appellant with the commission of the offense and therefore satisfied the provisions of Section 241, requiring such corroboration of the accomplice's evidence in order to sustain conviction.

"In determining whether an accomplice's testimony has been sufficiently corroborated under Section 241," as said in Robinson v. Commonwealth, 285 Ky. 838, 149 S. W. (2d) 502, 504, "the test is to eliminate the evidence of the accomplice, and if upon examination of all of the remaining evidence there is sufficient inculpatory evidence tending to connect the defendant with the commission of the crime, there is sufficient corroboration. Shields v. Com., 203 Ky. 118, 261 S. W. 865; Rose v. Com., 249 Ky. 103, 60 S. W. (2d) 374."

Further, in Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, this statute (Section 241, Criminal Code of Practice), requiring corroboration of accomplice testimony, was held to manifest intent to preserve accomplice testimony as evidence of guilt, but to

preclude conviction thereon unless accomplice testimony is confirmed by other corroborative evidence and that any evidence tending to corroborate accomplices testimony is sufficient to support conviction, the rule requiring corroboration not necessitating that corroborating evidence be of itself sufficient to establish accused's guilt.

In Miller v. Commonwealth, 285 Ky. 251, 147 S. W. (2d) 394, it was held that it is not essential under this Criminal Code provision (Section 241) that the corroborative testimony be of itself sufficient to establish guilty connection of the accused with the commission of the charged offense, but need only tend to so connect him.

To like effect was this section again construed in the case of Mauk v. Commonwealth, 268 Ky. 237, 104 S. W. (2d) 955.

An examination of these cases will disclose that the evidence relied upon by the commonwealth to corroborate the testimony of the accomplice tended in a substantial way to connect the accused with the commission of the offense.

The evidence, here relied upon as corroborative, we conceive does clearly measure up to the requirements of the modified rule announced in these cases, as strongly tending to connect appellant with the commission of the offense charged.

The sole question presented by this appeal being, as we conceive, that as to whether the testimony of the accomplice, Junior Smith, has been sufficiently corroborated and which, it is our conclusion, has been so corroborated by very substantial evidence tending to connect appellant with the commission of the offense charged, it becomes unnecessary to extend this opinion further in a discussion of the other grounds relied upon for reversal of the judgment, which but recite well settled rules of criminal law, as to which there is properly here no issue nor controversy.

Therefore, upon the whole case perceiving no error to have been committed but, on the contrary, being of the opinion that appellant has received a fair and impartial trial, without prejudice to any of his substantial rights, the judgment is affirmed.