# Hager v. Commonwealth.

June 22, 1945.

As Modified and Extended on Denial of

Rehearing Oct. 12, 1945.

Rogers & Rogers and William Isaacs for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney, for appellee.

Opinion of the Court by Judge Latimer—Reversing.

The appellant, Carl Hager, was tried and convicted in the Kenton Circuit Court on the charge of breaking and entering into the storeroom of another, and given five years in the penitentiary. He appeals, alleging two grounds for reversal, namely: 1. The court erred in admitting the confession or admission of appellant, obtained, as the evidence shows, in direct violation of Kentucky Revised Statutes, Section 422.110, and its older or parental source or corollary, Section 240, Criminal Code of Practice. 2. Error of the court in overruling Appellant's motion for a peremptory instruction.

On the night of January 24, 1945, the store of J. C. Penney Company, in the City of Covington, Kentucky, was broken into and a large quantity of men's suits and a couple of overcoats were taken. Some few days afterwards, the Covington Police Department received information that at a certain Cincinnati address two young men could be found who were connected with the crime. Following this information, two detectives, Lester Holian and Earl Christophel, set up watch near the address and apprehended the appellant, Carl Hager, and his codefendant, James Allen. They were returned to Covington and placed in jail, charged with the crime of breaking and entering into the J. C. Penney Store. The appellant's examining trial was set for Tuesday, February 13, 1945, before the Judge of the Police Court of the City of Covington. The case of James Allen was continued to Friday, February 16, 1945. At Hager's examining trial, no substantial testimony having been introduced by the Commonwealth showing the guilt of the accused, he was dismissed. Immediately following this, the Police Department reapprehended Hager and placed him in "the hold over cell" on the pretext that he was being held under some other charge. On Friday the 16th, the case against Allen was called and he entered a plea of guilty, and, immediately following that session of the Police Court, Detective Christophel entered the courtroom with the appellant, Hager. At this time counsel for Hager noticed that Hager's eyes were inflamed and that his nose was bruised and red. Counsel made inquiry as to who struck or hit him. Christophel informed counsel for appellant at that time that Hager had made a complete confession after his dismissal in Police Court, and stated

that they were holding him on additional charges. At its February term the Kenton Circuit Court returned an indictment against Hager and Allen for breaking and entering into the Penney Store. Allen pleaded guilty and it is understood that he is now on probation. Upon the trial, the appellant entered a plea of not guilty. The Commonwealth introduced Detective Christophel and others who testified that both Hager and Allen had admitted the burglary. Hager's counsel properly interposed objection to its admissibility on the ground that it was involuntary and obtained in direct violation of KRS 422.110. Whereupon, the court retired from the hearing of the jury and heard evidence in order to determine the admissibility of the evidence concerning the alleged confession. The court overruled the objection and admitted the testimony.

In determining whether the circumstances attending the confession are such as would entitle the confession to be received as the deliberate and voluntary statement of an accused person, the court must keep definitely in mind KRS 422.110, which provides:

"Confession obtained by 'sweating' not admissible.

"(1) No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so.

"(2) A confession obtained by methods prohibited by subsection (1) is not admissible as evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case."

There is no inclination on our part to criticize the officers, who, no doubt, were sincere, but officers having custody of a person charged with a crime must understand that prisoners in their custody have rights which must be respected. The section of the statute above

clearly sets out that confessions obtained by "sweating" are not admissible. There is no more firmly entrenched ruling of law than that confessions must be voluntary in order to be admissible in evidence. Our reports are full of adjudicated cases upon the subject of admissibility of evidence of confessions. It is rather difficult to draw a well defined and precise line between confessions which should be rejected and confessions which should be admitted. However, it appears to be the modern judicial tendency to refuse to admit confessions when there is any reasonable ground to believe that they were induced by hope or fear. See Commonwealth v. Long, 171 Ky. 132, 188 S. W. 334; Dickson v. Commonwealth, 210 Ky. 350, 275 S. W. 805; Cobb v. Commonwealth, 266 Ky. 711, 99 S. W. 2d 750; Cobb v. Commonwealth, 267 Ky. 176, 101 S. W. 2d 418; and Commonwealth v. Mayhew, 297 Ky. 172, 178 S. W. 2d 928. The section of KRS above appears even to go further than this and forbids the officer from attempting to obtain information from the accused by plying with questions or extorting information to be used against him on his trial by threat or other wrongful means. What exact questions or conduct shall constitute such violation is not most easily determined, and differences of opinion concerning the effect have given rise to the difficulty in drawing a precise line. Certainly, the entire circumstances following the arrest and leading up to the time of the alleged confession must be taken into consideration. Hager was first apprehended in Cincinnati, brought to Covington, placed in jail, was dismissed at his examining trial, rearrested immediately afterwards without a charge being filed against him, and according to his evidence, taken from his cell about fifteen times and plied with questions, admittedly plied with questions a number of times by the officers. Hager claimed he was knocked down and beaten up. The officers admit he was slapped once by another officer, however, claiming it was by another officer for a matter not related to the crime, but admittedly while in custody. It is uncontradicted that after they alleged he had made the confession, they questioned him no further. His attorney testified that when he came into the courtroom he had blood shot eyes and other evidences of violence, all of which was denied by the officers. When we consider the record as to the time, place, circumstances and surroundings of the defendant, together with the admitted conduct of the officers, no

reasonable mind can doubt that the alleged confession was wrung from the defendant.

Upon first blush, we are confronted with a seeming absurdity in that the defendant, denying having made the confession, was objecting to the confession being admitted in evidence, and was asking the court to hear evidence as to whether the confession was freely and voluntarily made. Upon more serious reflection, this seeming absurdity is dissipated since the interposed objection to the testimony relative to the confession goes to what the officers claimed was a confession resulting in the midst of and following the circumstances enumerated above. In other words, we shall suppose that the officers should violently abuse by physical force and threats, and even by the use of a gun, threaten an alleged criminal's life in an attempt to force a confession, which was actually never made, and which the person charged denies to have been made. If the officers should undertake to testify under such a state of facts, would any doubt be entertained as to the admissibility of such alleged confession under such circumstances? Thus, even though it was denied, if what the officers were to testify in the instant case was induced under circumstances as would evidence it not to have been freely and voluntarily made, then such alleged confession would be inadmissible.

More than that, the character of an alleged confession goes deeper than the mere procedural formality in determining its admissibility. The evidence is first offered and objection is interposed. The court then retires from the jury and hears evidence as a basis of determining its admissibility, and then returns to the jury for its admission. This, obviously, gives added weight to the character of testimony. Therefore, it should be scrutinized carefully by the trial court before it is allowed to be introduced.

When we consider all the circumstances and conditions surrounding the alleged confession, we are inclined to believe that the evidence of the confession was inadmissible.

We now reach the second question, was appellant entitled to a directed verdict or was the testimony of the accomplice, James Allen, sufficiently corroborated under section 241 of the Criminal Code of Practice to take the

case to the jury and sustain a conviction? The rule in this jurisdiction now is that the corroborating evidence, of itself, need not be sufficient to establish defendant's guilty connection with the perpetration of the crime, but need only tend to connect him with its commission, Williams v. Commonwealth, 257 Ky. 175, 77 S. W. 2d 609. Eliminating the confession, the record shows that when Hager and Allen came out of Paul Rinser's home in Cincinnati (which was being watched by the police) they fled upon seeing a police cruising car. The officers pursued and captured them and they were returned to Rinser's home, where a suit of clothes was found which was identified as having been taken from the Penney Store on the night these two men are charged with robbing it.

It was written in Robinson v. Commonwealth, 285 Ky. 838, 149 S. W. 2d 502, that the flight of the accused at the approach of an officer, accompanied by other unusual behavior on his part, was sufficient corroboration of the testimony of the accomplice to connect him with the commission of the crime and to sustain a conviction.

So here, the flight of Hager in company with Allen at the sight of the police car upon leaving Rinser's house, and the discovery of part of the loot when they immediately were captured and returned to that house, sufficiently corroborates the testimony of the accomplice, Allen, to connect Hager with the commission of the crime and to sustain his conviction. The court appropriately instructed in the language of section 241.

On another trial the confession of Hager will be excluded. Should the evidence be substantially the same as to the flight of Hager and the finding of the clothes in the Rinser home, it will sufficiently corroborate the testimony of the accomplice, Allen, to take the case to the jury and to sustain a verdict in the event of a conviction.

The judgment is reversed for proceedings consistent with this opinion.