## Vires v. Commonwealth.

May 23, 1950.

S. M. Ward, Judge.

Fred K. Cope for appellant.

A. E. Funk, Attorney General, and Walter C. Herdman, Assistant Attorney General, for appellee.

Morris, Commissioner—Affirming.

On his trial for murder appellant was found guilty, the jury inflicting a sentence of life imprisonment. From a judgment following the verdict appeal is prosecuted, and for reversal appellant offers two grounds: First, that the evidence of the chief prosecuting witness, Junior Wagers, whom appellant insists was an accomplice, was not sufficiently fortified by other evidence to take the case to the jury. Second, that the evidence of Wagers should have been excluded because he had been promised immunity from prosecution.

The shooting which resulted in the death of Harmie Combs, a man about 65 years of age, occurred at his home in Christopher, Perry County. Appellant was a cousin of Combs' wife and Wagers a brother; Wagers and appellant met in Hazard in mid-afternoon of April 11, 1949, and were together until after the shooting occurred shortly after dark.

Wagers testified in substance that Vires proposed buying some wine, and they went to Vires' home to procure funds from his wife for the purpose. She was not at home; while there Vires procured his pistol, a 45 Colts and put it under his coat. They then went to the home of another relative of Vires where his wife was visiting and Vires procured two dollars with which he purchased a half gallon of wine. Vires suggested that they go to Combs' home and have a party. Wagers protested but finally agreed to go. When they arrived a dog began to bark inside the house. He says, "The old man hissed the dog from the inside and Vires pulled his gun and shot the dog." It is not made quite clear, but we gather Wagers' testimony to be that the "old man" came to the door with a shotgun, and Vires began firing, with the result that Combs received two wounds, one in the left thigh, the other in his right hand. Wagers says he told Vires, "don't do that, and I knocked his arm down and he shot toward the floor." He said that Vires took the shotgun and threw it in a branch a short distance from the Combs' home.

A young son of Combs said he and his father were in bed in the same room. He heard a knock on the door,

and his father told them "to go away; I got up and went to the door" after a shot had been fired and saw Vires with a pistol. He says Vires struck him on the shoulder with the pistol and said, "you better not fool with me, and I took off down through the field." Another witness on his way home beyond the Combs' residence, said that he met Wagers, and a man whom he did not recognize, who was carrying a pistol in his right hand. They were going in a direction from the Combs' home.

Appellant's testimony was in direct conflict. He agrees that they met up in Hazard, but that Wagers suggested buying wine. He agreed that they went to his home and not finding the wife Wagers suggested that he would pawn the pistol, and redeem it on Monday; he said Wagers took the pistol and put it in his pocket, and that he, Vires, did not have possession of it until the next morning when Wagers brought it to his home. He says that when they got to the Combs' home Wagers went on the porch ahead of him, and when the dog came out Wagers shot it and when the "old man" appeared he shot him and took the shotgun and threw it in the branch. He said that he did not fire a shot. His testimony as to return of the pistol and other evidence tending to incriminate Wagers was corroborated.

The record shows that while there were no specific objections to Wagers' testimony, at the close counsel moved to exclude it from the jury "because the witness had been promised immunity if he would testify against defendant." Wagers had testified that he was arrested and held in jail for several days; that the County Judge promised that he would be released if he would appear as a witness against Vires, and "make an indictment against him." This bold statement is somewhat softened by the further statement of the witness, without objection: "The old man told them up at the hospital that Estill Vires shot him. The judge went up there and talked to him and the old man told him Estill Vires shot him, and to release me from jail; that I didn't have anything to do with it; that's when I was released."

The almost universal rule is that the promise of immunity from prosecution does not render the testimony incompetent. Henderson v. State, 135 Fla. 548, 185 So. 625, 120 A.L.R. 742. Inducements of such character do not serve to render the testimony incompetent,

but may offset the credibility of the witness, or the weight to be given to the testimony by the jury. State v. Shelton, 223 Mo. 118, 122 S.W. 732. In copious notes to the Henderson case, 170 A.L.R. 742, citing cases from more than 13 states, England and Canada, there are only two exceptions noted, one being where money was used to procure the witness to testify, another where the witness had agreed to testify falsely.

On the question of lack of corroborating evidence, the Commonwealth in brief contends that Wagers was not an accomplice. Appellant's counsel takes the position that he was, and we need not determine this question, since if he was not an an accomplice his testimony was not subject to the rule. Section 241, Criminal Code of Practice.

Counsel argues that it was necessary to conviction that Wagers' testimony should be corroborated and since there was a failure the court should have directed an acquittal. The rule is that the evidence of an accomplice is not sufficient to warrant conviction "unless corroborated by * * * evidence tending to connect the defendant with the commission of the offense. " We have in many cases placed emphasis on the words "tending to connect," and have held that corroborating evidence itself need not be sufficient to establish defendant's guilt, but need only tend to connect him with its commission. Hager v. Commonwealth, 300 Ky. 585, 189 S.W. 2d 867; Robinson v. Commonwealth, 285 Ky. 838, 149 S.W.2d 502.

Here we have the circumstantial evidence to the effect that Vires had the pistol after the shooting of the dog, and that of the witness who later saw him with the pistol, and the undisputed fact that the shots which took Mr. Combs' life were from a pistol owned by appellant.

While the non-circumstantial evidence is sharply conflicting, it was to be measured and weighed by the jury. It had the right to believe either the one or the other, and had the right to doubt the testimony of appellant, who testified that he had theretofore been convicted on a felony charge.

We find nothing in the record, or presented to us in appellant's brief which would justify reversal, so the judgment is affirmed.