## Crum v. Commonwealth.

Oct. 4, 1940.

John W. Caudill, Judge.

484

Joe P. Tackett and W. S. Wallen for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Given five years imprisonment for shooting and killing Bee Bentley, appellant is asking us to reverse the court's judgment because of alleged prejudicial errors, in:

(1) Overruling motion for a directed verdict;

(2) Failure to instruct on the whole law of the case, and

(3) Pronouncing sentence on the same day of the term on which verdict was returned, contrary to the provisions of Section 283 of our Criminal Code.

Looking to ground No. 3, we find the record shows that the verdict was returned on September 15, 1939, and judgment rendered on the same day. Counsel for appellant insist that the section of the Code, supra, is mandatory, and has been held to be so by this court. The section in part provides:.

"* * * upon verdicts of convictions in cases of felony, the court shall not pronounce judgment until two days after the verdict is rendered, unless the court be about to adjourn for the term."

The court in this instance was not about to adjourn for the term.

In Hansford v. Com., 170 Ky. 700, 186 S. W. 498, we held that the action of the court in prematurely imposing sentence was error, but that in order to be available as a ground for reversal, proper exceptions and objection must have been taken at the time, else the error was waived.

The error has been denominated as "harmless" in several cases; in others where it was further shown that timely objection was interposed with exceptions, and it was further shown that the accused was prejudiced by the precipitancy, we have reversed. Powers v. Com., 139 Ky. 815, 83 S. W. 146, is an example of the latter class. There it was shown that appellant's counsel protested vigorously that due to the extremely long trial, and their inability to present properly and discuss a motion for new trial, their client's rights were prejudiced by the hastily entered judgment.

Both the Powers and Hansford cases are referred to in Miller v. Com., 231 Ky. 527, 21 S. W. (2d) 840, 845. In that case it was pointed out that upon return of the verdict appellant filed motion for a new trial, supported by fourteen or more grounds. We said:

"The record contains no intimation that any further time was needed to prepare additional grounds, or that any additional grounds could be produced, or that any additional time was needed in which to show cause why sentence should not be passed upon him. There then remained nothing else to be done except to pronounce judgment."

So it was here. Appellant stood mute when asked if he had any reason why judgment should not be pronounced; he did object to the entry of the judgment, though not on the ground that he could augment his ten or more grounds for a new trial; the hasty entry of the judgment was not relied upon as a ground. In the absence of such ground it is treated as waived. Sorke v. Com., 271 Ky. 482, 112 S. W. (2d) 676. In addition to

the cases cited, and in point, we may add O'Brien v. Com., 89 Ky. 354, 12 S. W. 471; Swanigan v. Com., 240 Ky. 504, 42 S. W. (2d) 726.

Grounds Nos. (1) and (2) necessitate a brief review of the evidence. The homicide occurred shortly after eleven o'clock on the night of some undisclosed date in September, 1939, apparently a short while before the return of the indictment during the same month. The scene was near the home of Marion Lafferty, who lived near Allen, in Floyd County. On the particular night, some twenty or more young people, among them deceased, had gathered at the Lafferty home for a "bean stringing" and "pea shelling," which tasks had been accomplished about nine-thirty o'clock. Thereafter the visitors resolved into a frolicking party, indulging chiefly in the Virginia Reel.

Martha Lafferty and deceased, who had been sweethearts for some time, were engaged to be married. Several nights before the night of the homicide, at another party, Martha had rejected appellant's offer to "see her home," and though it is not made clear from the proof, it is discernible that the difficulty in which Bentley lost his life was the outgrowth of jealousy. The proof is that when the young folks began the dance, it developed that Bentley was not schooled in the art, and Martha desiring to take part was told by him to go ahead and dance with some of the others; she chose appellant as her partner, and during the next hour or two they danced three or four sets. The party broke up around eleven o'clock, and the visitors began to depart in groups.

Bentley lived down the river below the Lafferty place. He had two ways to reach home; by following the county road, or by taking the same road for about 100 yards, then crossing a bottom and following a path over to the railroad, thence down the railroad to his home. Appellant lived up the river at Barnes, and in going home he followed the county road up the river. After the party was over, appellant and a number of young folk were traveling up the county road in groups toward their respective homes.

At a point near where Bentley would have taken the path leading to the railroad, and which point some of appellant's friends had reached, a difficulty arose in

which Bentley seems to have taken an active part, and in which appellant was not primarily involved. The proof shows that in the difficulty—for the existence of which no sort of explanation is given—Bentley had knocked down some one or more friends of appellant, some falling into the ditch by the side of the highway.

At this point it may be observed that there were indications of trouble brewing just prior to the breaking up of the party. The proof shows that after the departure of some of the guests, and as others, including appellant, were about to leave, Mrs. Lafferty came to the door and said: "We don't want any fighting here," and was assured by appellant that there would be none.

There is little evidence showing any misunderstanding in the Lafferty home, and quite strangely no evidence showing the occasion for the remark by Mrs. Lafferty, but no doubt she, with a mother's intuition, had noted the presence of that monster, jealousy, "which doth mock the meat it feeds on."

The difficulty up the county road appears to have been started by one of the witnesses, Jim Meade, though it is difficult to ascertain how or why it began. However, after it started, Bentley arrived on the scene and took a leading part. He knocked down several of the members of the group, and then turned to appellant who had approached and knocked him into the ditch. While Crum, and at least one of his companions were still in the ditch, Bentley moved forward toward the ditch, and in the direction where Crum was lying. Appellant though admittedly not knowing it was Bentley approaching, turned on his side and fired one shot from his pistol, striking Bentley, who died from the effect of the shot.

The proof shows that about eleven of the young men, who made up the group which went to the party with appellant, had obtained and consumed a quantity of "moonshine" before going to the "bean stringing," though there is little evidence indicating that any of them were intoxicated to a great degree. It is also clear from the proof that prior to the melee there had been no demonstration of ill feeling between appellant and deceased. They had not been acquainted, except slightly, for any appreciable length of time. It is also clear that Bentley at the time of the encounter, or prior

thereto, had no weapon of any sort. Appellant was the only one in the crowd who had fortified himself with a deadly weapon, which he says he loaded at home before starting to the party.

There was some proof to the effect that while the dance was in progress at Lafferty's home, Bentley was heard to say that he was going to "whip Crum for dancing with my girl," and it is suggested by inference that Bentley and his friends had "ganged up" to assault Crum. This is argued because appellant contends that as he was going up the road with his friends, and got near to the group which was ahead of him, "Jim Meade had Curt Hunt by the shirt collar, and I told him not to have any trouble, and about that time Bentley came up and knocked me into the ditch." Appellant says he fired his pistol at a person he thought to be Bentley, "because I thought he was going to kill me. I didn't know what was in his hand. I could tell he had something; I thought he was going to kill me."

While admitting he fired the fatal shot, his contention was that it was fired in protection of his life, or to obviate apparent impending danger or injury. Thus we have another of those cases where the accused admits the slaying, and undertakes to excuse himself under the plea of self-defense.

Counsel for appellant, reciting the facts in substance as we have done, insists that the court should have instructed the jury to return a "not guilty" verdict, his insistence predicated upon the idea that appellant made out a clear and convincing defense which excused the homicide.

It may be admitted that there are some facts shown which would tend to indicate that appellant believed himself to be in danger at the hands of Bentley. However true this may be, it is not within the province of the court to assume the functions which under our system of jurisprudence are peculiarly vested in those who are selected as jurors. We have frequently held that in homicide prosecutions, where the accused admits the act which caused death, the only question for the determination by the jury, in considering guilt or innocence, is whether or not the accused has brought forward such proof as would ordinarily convince the jury that he was acting in the defense of himself. Bigby v. Com., 273 Ky.

335, 116 S. W. (2d) .659. It is only in such cases when it is shown by the proof, uncontradictedly, that the act was committed in self-defense that the court is justified in taking the case from the jury. Reed v. Com., 273 Ky. 607, 117 S. W. (2d) 589, 116 A. L. R. 673.

In addition to the rule mentioned, we have also held that under correct self-defense instructions, the jury could take into consideration the question of whether or not accused used more force than was necessary in repelling the claimed anticipated danger. Lawson v. Com., 224 Ky. 443, 6 S. W. (2d) 488. Here there was a conflict of evidence as to the action and attitude of the parties; the proof is clear that deceased was not armed, but was using nature's weapons in the encounter which finally resulted in his death. We are of the opinion that there was ample proof to sustain the jury's verdict, and it naturally follows that the court committed no error in overruling the motion for a peremptory instruction.

The final contention is that the judgment should be reversed because of the court's failure to embody in the self-defense instruction the right of appellant to have shot Bentley to avert pending injury to his companions, or such of those who were near him in the roadside ditch. As we read the proof we find no room for such an instruction.

Counsel cites in support of his argument only one case, Partin et al. v. Com., 197 Ky. 840, 248 S. W. 489, a reading of which will demonstrate that the facts adduced therein are quite different from the facts here, upon which it is claimed the instruction should have been predicated. As we read the proof, appellant does not place any of his companions in a position of danger. He says he acted solely in his own defense. At the time the shot was fired, Bentley, if doing anything, was approaching appellant, and the companions were some distance from him, and none of whom made any claim of impending danger at the hands of Bentley.

Under this proof we are convinced that the court was not authorized to give the so-called "defense of another" instruction, since the rule is that in order to necessitate the giving of any particular instruction there must be evidence upon which the same may be based. A "defense of another" instruction is not required unless the evidence justifies it or tends to show

490

that the accused actually shot in defense of another. Williams v. Com., 276 Ky. 754, 125 S. W. (2d) 221. When accused testified that he shot to protect himself, it was not error to omit the "defense of another" instruction. Farley v. Com., 268 Ky. 277, 104 S. W. (2d) 972; Thomas v. Com., 195 Ky. 623, 243 S. W. 1; Pergram v. Com., 242 Ky. 465, 46 S. W. (2d) 780; Lassiter v. Com., 249 Ky. 352, 60 S. W. (2d) 937.

Having given the record careful attention, particularly in respect to the grounds urged for reversal, we are of the opinion that the court did not commit any reversible error, but on the other hand accorded appellant a fair and impartial trial, hence we are compelled to and do affirm the judgment.