## Gross v. Commonwealth.

May 28, 1943.

J. B. Wall for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Upon the trial of an indictment charging appellant, Morris Gross, with the wilful murder of Ray Cornett, he was convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for 10 years. Four errors are assigned for reversal of the judgment: 1. The verdict is flagrantly against the evidence; 2. the instructions did not give the whole law of the case; 3. the court erred in ordering a jury summoned from Bell County; 4. the court erred in not admonishing the jury the purpose of impeaching character evidence.

John Gross was jailer of Harlan County and his 17 year old son, Morris, the appellant, was his turn-key. Morris' application for enlistment in the U. S. Navy had been accepted and on the night of October 10, 1942, the day before he was 17 years of age, his sister, Mrs. Madeline Fee, gave a "going away" party in his honor at her home located at where the witnesses testified was from 150 to 400 yards from Dave Hall's place, situated at the outskirts of Harlan, which appears to have been a restaurant where beer was sold. Morris left the party

around 8:30 in the evening and in going to Hall's place noticed a car on the road being operated by an intoxicated person. He reported this by telephone to Carl Preston, a sergeant in the highway patrol. Preston drove to Hall's place, picked up Morris and they started looking for the drunken driver.

After driving out the road without locating the culprit, they returned to Hall's place. Shortly thereafter Ray Cornett drove up in a reckless manner and parked his car on the wrong side of the road. Preston and Gross alighted from the patrol car and went over to Cornett's one-seated car. Preston was at the left door of Cornett's car with Morris just to his left and slightly behind him. Cornett was drunk and Preston told him to turn his car over to some one and come with him. About that instant, Fred Hattocks, a peace officer, drove by and shouted to Preston, did he need help? In answering in the negative, Preston turned his head and as he did so, and without a word being spoken between Morris and Cornett, the former drew a pistol from his pocket and shot the latter five times in the face, instantly killing him. Preston immediately arrested Morris and requested Jim Kilgore to shut off the motor of the Cornett car, which he did by going to the right door. Kilgore testified he found a .45 automatic pistol on the floor of the car when he turned off the motor which he delivered to appellant's father, the jailer. Preston told Hattocks to watch the car until he returned, and Hattocks did not see Kilgore get the pistol, although Charles Tolliver and Elbert Smith testified they saw Kilgore get the pistol from the floor of the car.

Morris testified that Cornett previously had killed his (Morris') brother and was a dangerous man while drinking; that just as Preston turned his head Cornett glared at Morris, gritted his teeth, jerked his hand off the steering wheel and came up with a pistol; that before Cornett could get it in a shooting position he shot him five times with a pistol he usually carried on his person in performing his jail duties. Morris testified that not a word passed between him and deceased on the occasion of the tragedy.

James Turner testified he was just about a foot behind Preston and Morris; that when Preston turned his head to answer Hattocks, Morris shot Cornett without either of them saying a word while the latter had one

hand on the steering wheel and the other on the door of his car, and there was nothing in his hands. Kilgore testified that he was at Morris' shoulder and when Preston turned his head Cornett gritted his teeth, made a face, drew his gun and had it in a firing position when Morris shot him. Likewise, Elbert Smith corroborated Morris in his version of the shooting. Charles Tolliver's statement was read to the jury to the effect that Cornett started to pull his pistol out of his pocket and then Morris shot him. Austin Burgan's testimony in substance was that deceased had a .45 pistol in his car 15 or 20 minutes before he was killed, and Farmer Boggs testified deceased had a .45 automatic pistol on the seat of his car between 4:30 and 5 o'clock in the afternoon before he was killed about 8:30 that evening. Bill York and Eugene Greer testified that James Turner was with them at Mrs. Madeline Fee's gate when the shooting occurred and none of the three saw it, but all of them immediately ran to the scene when it occurred; while Dave Hall and Charlie Delph placed Turner at the scene immediately after the shooting, the latter seeing Turner just as he stepped out of the building as the shooting ceased.

From this narration of the testimony it is apparent that the verdict is not flagrantly against the evidence. Here the evidence was in direct conflict, therefore the credibility of the witnesses and the weight to be given their testimony was for the jury to determine. The fact that three eyewitnesses testified for appellant while but one testified for the Commonwealth does not signify that the jury should have accepted their version of the shooting rather than that given by James Turner, since the jury may accept the testimony it thinks the most reasonable. Where there is evidence to support the conviction and the verdict is one that reasonably could have been returned, it is not flagrantly against the evidence. Shepherd v. Com., 236 Ky. 290, 33 S. W. (2d) 4. Although we may not have arrived at the same conclusion reached by the jury, it is not within the province of this court to weigh the evidence and determine its preponderance, but only to say whether there is any evidence to support the verdict and whether it is palpably against the weight of the evidence. Bullock v. Com., 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407; Davis v. Com., 270 Ky. 53, 109 S. W. (2d) 2; Carter v. Com., 278 Ky. 14, 128 S. W. (2d) 214.

Appellant's complaint of the instructions is: 1. That he was entitled to an instruction telling the jury it was Cornett's duty to submit to arrest and if he resisted, appellant, who had been summoned by Preston to assist him in making the arrest, had the right to use such force as was reasonably necessary to overcome Cornett's resistance; 2. that the instructions should not have limited appellant to shooting in his own self-defense, but should have allowed him to shoot in defense of Preston. From the above brief synopsis of the testimony it is apparent that neither criticism is tenable. Instructions should present the law applicable to the particular facts proven. Golden v. Com., 275 Ky. 208, 121 S. W. (2d) 21; Sizemore v. Com., 285 Ky. 499, 148 S. W. (2d) 341; Crum v. Com., 284 Ky. 483, 144 S. W. (2d) 1047. This record fails to show any evidence that Gross was assisting Preston in arresting Cornett, or that the latter was resisting; nor does it reveal any testimony tending to show that appellant shot in defense of Preston or that the latter was in any danger at the hands of Cornett.

Appellant's first trial on February 1 and 2, 1943, resulted in a hung jury. On that trial only 7 jurors of the regular panel of 26 members were accepted, and the court ordered the sheriff to summon a special venire of 30 from which the jury was completed. When the jury was discharged the second trial was set for February 4th, and the commonwealth attorney moved the court to have a venire summoned from another county as provided by sec. 194 of the Criminal Code of Practice on the grounds that it had been difficult to obtain a jury in Harlan County for the first trial which resulted in a hung jury; that due to the publicity given the case through the first trial and to the wide connections of the parties interested in the prosecution and in the defense, it would be impracticable to obtain a jury in Harlan County to try the case. The order of the judge sustaining the motion and directing that a venire of 40 be summoned from Bell County set out almost in haec verba the grounds contained in the Commonwealth's motion as his reason for doing so.

It is insisted that the trial judge made no effort to obtain a jury from the county where the homicide occurred and as no affidavits were filed or proof heard showing that it was impracticable to obtain a jury of the venue, his action in having a venire summoned from an-

other county was so arbitrary as to constitute reversible error, citing Brown v. Com., 49 S. W. 545, 20 Ky. Law Rep. 1552; Alsept v. Com., 245 Ky. 741, 54 S. W. (2d) 337; Williams v. Com., 258 Ky. 574, 80 S. W. (2d) 573. An examination of these authorities shows this court has held that where no good faith effort was made by the trial judge to obtain a jury in the county where the prosecution was pending, and there was nothing appearing in the record to show such a jury could not be obtained, it was error to direct a venire be summoned from another county.

But in the instant case the judge just three days before had considerable difficulty in obtaining a jury from the vicinage and that trial resulted in a hung jury. This fact certainly would have more influence with the judge than statements contained in affidavits or testimony heard from the witness stand as to whether it was impracticable to obtain a jury from the vicinage. It strikes us that the experience the judge had on the first trial made it unnecessary for him to go through the mere formality of trying to get a jury from the venue before he could order a venire summoned from another county under sec. 194 of the Criminal Code of Practice. As was written in Johnson v. Com., 250 Ky. 297, 62 S. W. (2d) 1025, 1026, ''The law does not require a vain or foolish thing,'' and the experience of the judge on the first trial was entitled to be considered by him in obtaining a jury for the second trial. In the Johnson case the commonwealth attorney filed affidavits in support of his petition to have a venire summoned from an adjoining county, and it would have been better practice in this instance had that official supported his motion with affidavits, but in the circumstances we do not think a failure to do so made the court's action arbitrary. We must not be understood as saying that the court may direct a venire to be summoned from a surrounding county on the unsupported motion of an attorney representing the Commonwealth without first having made a fair effort in good faith to obtain a jury from the vicinage. That a judge cannot do. The trial judge is given a sound discretion by sec. 194 of the Criminal Code of Practice, and it has been written we will not interfere therewith unless it is manifestly abused. Carter v. Com., 267 Ky. 640, 102 S. W. (2d) 1020; Canter v. Com., 274 Ky. 508, 119 S. W. (2d) 864. In the case at bar there was no showing of any irregularity in the summoning of the venire, or

that any of its members were disqualified or guilty of misconduct or were prejudiced or biased against appellant; and if the court did err in having the venire summoned from Bell County, which we do not think he did, then there is no showing that the substantial rights of appellant were prejudiced thereby (sec. 340, Criminal Code of Practice.; Sexton v. Com., 292 Ky. 18, 165 S. W. (2d) 829).

We cannot regard seriously the contention of the appellant that the court should have admonished the jury that the Commonwealth's rebuttal evidence that the reputations of certain defense witnesses were bad for veracity was for the purpose of affecting the credibility of the witnesses impeached. In the first place the purpose of such evidence is self-evident. Secondly, it is only when the general reputation of the defendant is shown for the purpose of impeaching him that an admonition is necessary, and then it is not incumbent upon the court to give it unless requested. Clair v. Com., 267 Ky. 363, 102 S. W. (2d) 367; Wright v. Com., 267 Ky. 441, 102 S. W. (2d) 376. In the instant case there was no reason for the court to admonish the jury, and if there had been, it would not have been incumbent upon him to do so as no request for an admonition was made.

The judgment is affirmed.