# Allen v. Commonwealth

June 7, 1946.

Leebern Allen for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Sims—Affirming.

Ramey Allen was convicted of the murder of Edgar Begley and his punishment was fixed at life imprisonment. To reverse the judgment he assigns five errors, two of which are practically the same and another was not argued in his brief, therefore it is waived. The three we are concerned with are: (a) The verdict is flagrantly against the evidence; (b) the verdict is the result of passion and prejudice; (c) incompetent evidence was introduced by the Commonwealth.

To dispose of appellant's first ground it is necessary to give a brief resume of the evidence. Although the record makes no direct reference to appellant's size, his brief describes him as a midget four and a half feet tall and weighing but 90 pounds. As appellee's brief does not take issue with that statement of fact, we will presume it to be correct. The record does disclose appellant was 26 years old and that the man he killed was much larger than appellant.

About dark on Saturday evening, Sept. 15, 1945, Ed. Todd, George and Edgar Begley and Ramey and Daniel Allen were all in Todd's automobile. George, the father of Edgar, was on the front seat with Todd, who was driving. Ramey was seated between his brother, Daniel, and the deceased, Edgar, on the back seat, the latter being on Ramey's left. All five of the men were drinking. Edgar and Ramey had been gambling in a card game with some other men and Edgar had lost. During the game George was seen to give his son $30 or $35. The record does not show just what sum Edgar lost in the game, but only $2.23 was found on him after he was shot. In a statement which was admitted as his

dying declaration Edgar said the Allen boys shot him and took $40 of his money.

The car in which these men were riding passed near Daniel Allen's residence and he put his two small children out to go home but Daniel remained in the car. Then Todd drove to within three-fourths of a mile of Ramey's home, but the car could not get over a hill and Ramey did not leave it to go home but remained in the car after Todd turned around. After driving about two miles Ramey and Edgar started wrestling on the back seat and fearing they were going to fight, Todd stopped the car and he and George, the latter being quite drunk, got out of the car. Daniel testified that he also got out at this point.

Ramey's testimony was to the effect that he tried to follow his brother out of the car but Edgar caught him by the left shoulder and pulled him back and started attacking him with a razor, which he had taken from Ramey's hip pocket, and that he shot Edgar to repel his attack; that he (Ramey) had a little package in his left hip pocket which contained a straight razor to be used for shaving, as he had intended spending the night with his brother. He further testified that Edgar cut a hole in his trousers, sweater and shirt and he felt the blade of the razor on his body but it did not break the skin. Ramey exhibited this wearing apparel to the jury, but did not produce his underwear, saying he had left it at home.

George Begley did not return to the car the night his son was shot but went home after hearing three shots fired. George and one Bill Isaacs were looking around the car the next morning when George Todd, a brother of the owner of the car, found the razor on the floor in the back of the car when he went to get a jack. The razor was in a cloth case which was wrapped in paper and the razor, itself, was "tied up with sewing thread" when found on the floor of the car by Todd.

It is possible that George Begley might have wrapped and tied the razor and then placed it back in the car. But that was a question for the jury to determine. The fact that Ramey had the razor wrapped in his pocket and that it was found the morning after the shooting on the floor of the car in the case and tied with thread justified the jury in rejecting his testimony that he shot

in self-defense to prevent Edgar from cutting him. Furthermore, appellant fled to Michigan soon after the shooting and this established a presumption of his guilt. Smith v. Com., 242 Ky. 399, 46 S. W. 2d 513. The credibility of the witnesses and the weight to be given their testimony rests within the discretion of the jury and a verdict is not flagrantly against the evidence when it is reasonable for the jury to find from the facts and circumstances that the accused committed the crime with which he is charged. Crawford v. Com., 281 Ky. 557, 136 S. W. 2d 754, and the authorities therein cited.

Appellant was asked upon cross-examination how many times he had been convicted of felony, to which he replied, "twice." His counsel objected to this question but did not ask the court to admonish the jury that it went only to the credibility of his client as a witness. It is now argued that the failure of the court to give such an admonition is reversible error.

This testimony was admissible under Sec. 597 of the Civil Code of Practice, but the court should have admonished the jury that it went only to appellant's credibility. We have many times written that the failure of the court to give this admonition is not reversible error where on the whole record it was not prejudicial to the accused. Gibson v. Com., 226 Ky. 186, 10 S. W. 2d 646. We have further written that the right to this admonition may be waived by the accused in not requesting that it be given. Smallwood v. Com., 289 Ky. 554, 159 S. W. 2d 401; Gross v. Com., 294 Ky. 492, 172 S. W. 2d 78, 81. Under the facts presented in this record it was not prejudicial error for the court to fail to admonish the jury that appellant's previous conviction of felony went only to his credibility as a witness.

The incompetent evidence of which appellant complains is that the court admitted certain statements deceased made to his wife and brother shortly before his death to the effect that the Allen boys shot him and took his money, $40. Edgar was shot in the stomach near the navel with a pistol late Saturday evening. He submitted to an operation in a hospital on Sunday preceding his death Monday morning at 6 o'clock. After the operation he said to his wife, "I just can't make it". "Lo, I can't get well". He then told his wife that the Allen boys had shot him and taken his money, and the next morning about two hours before his death and without

any improvement in his condition and without expressing any hope that he would live, he told his brother, Earl, who came to his bedside, that the Allen boys had shot him and taken his money.

Before a statement may be introduced as a dying declaration it is first necessary to show that it was made in extremis when all hope of life had been forsaken and that it was given under a solemn sense of impending death, but it is not necessary that the decedent declare in express words that he is about to die. Whether or not the declarant believed death to be imminent may be determined not only by what he said, but by the character of his wounds, his conduct, and all the surrounding circumstances. Robertson's Criminal Law, 2d Ed., Secs. 439, 442, pp. 581, 587; Sanders v. Com., 255 Ky. 456, 74 S. W. 2d 922.

It was not necessary for Edgar to repeat to his brother, Earl, a couple of hours before his demise his consciousness of impending death in order to make his statement competent as a dying declaration, as Edgar's condition had not improved since he told his wife that death was imminent and he had expressed no hope of recovery subsequent to the conversation with her. Holbrook v. Com., 249 Ky. 795, 61 S. W. 2d 644. In Daniel v. Com., 154 Ky. 601, 157 S. W. 1127, a statement was admitted as a dying declaration which was made some 30 or 36 hours preceding death, while here the declaration of impending death was made on Sunday before death occurred early Monday morning

The brief for the Commonwealth was written with such a dim ribbon as to give a blurred effect and it was most trying on the eyes to read. It violated section 3, subsection 2, of our rules. As we have much reading to do, we are constrained to call to the attention of the profession that we should not be subjected to dim or blurred briefs and records, and there should be a compliance with the rule just mentioned. We further call attention that on the second page of the Points and Authorities of this brief of the five cases cited, three are inaccurate as to book or page. Counsel should check their briefs as to the accuracy of the citations they contain.

The judgment is affirmed.